<hr />

## Finletter *v.* Appleton.

195 349
f195 354
195 355
195      349
f 33 SC ¹128

*Equity—Pleading—Cause of action.*

Pleadings in equity like those at law should show a good cause of action. Every material fact on which the plaintiff relies for relief must be distinctly and clearly averred, and that, too, with reasonable fullness and certainty. If he does not disclose in his bill a cause of action against the defendant, the latter cannot be called upon to reply or to defend.

*Corporation—Stockholders—Fraud—Equity pleading—Demurrer.*

A bill in equity for an accounting and to compel payment of unpaid subscriptions to capital stock by the receiver of a corporation against persons who are owners of, but not the original subscribers to, certain full paid shares of stock of the corporation, which alleges that the stock was fraudulently issued and that it is not full paid, is demurrable, if there is no allegation in the bill that the defendants are not holders for value with notice of the fraud alleged in the bill.

Fraud is not to be presumed but must be alleged as well as proved.

If a creditor of an insolvent corporation has grounds to believe that the holder of its stock is not a bona fide owner for value he should aver it in his bill. If he does not so believe and cannot allege it, the owner should not be required to show that his acquisition of the stock was, as it is presumed to have been, in good faith and for value. He should not be compelled to defend his title until it has been attacked by proper averments in the bill.

Argued Jan. 22, 1900. Appeal, No. 374, Jan. T., 1899, by plaintiff, from decree of C. P. No. 1, Phila. Co., Sept. T., 1897, No. 733, dismissing bill in equity in case of Robert W. Finletter, Receiver of the Acetylene Light, Heat & Power Company, *v.* Katharine P. Appleton et al. Before McCollum, Mitchell, Fell, Brown and Mestrezat, JJ. Affirmed.

Bill in equity to enforce payment of money alleged be due on stock not full paid.

The facts are fully stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing bill.

*E. O. Michener* and *P. K. Erdman*, for appellant.—The bill is drawn in accordance with the practice established by this court: Lane's App., 105 Pa. 49; Bell's App., 115 Pa. 88; Citizens, etc., Bank v. Gillespie, 115 Pa. 572.

As soon as the fraud is shown the burden is upon the holder to show affirmatively his bona fides: Hoffman v. Foster, 43 Pa. 137; Smith v. Popular, etc., Association, 93 Pa. 19; Hardware Co. v. First Nat. Bank, 109 Pa. 240; Clark v. Clark, 174 Pa. 309; Crothers v. Crothers, 149 Pa. 201; Darlington's Est., 147 Pa. 624; Bolton v. Johns, 5 Pa. 145.

Having come into privity with the corporation by becoming a·holder of its shares, the stockholder is by implication held to knowledge of and liability for all the obligations of the holder from whom he purchased : Webster v. Upton 91 U. S. 65; Upton v. Tibilcock, 91 U. S. 45.

If the property which is turned in is practically worthless, or is unsubstantial or shadowy in its nature, the courts will hold that there has been no payment at all and that the stockholders are liable on the stock: Cook on Corporations, 124; Camden v. Stuart, 144 U. S. 104; Lloyd v. Preston, 146 U. S. 630; In re Theatrical Trust, 72 Law Times, 461; Peck v. Elliott, 79 Fed. Repr. 10; Addision v. Pacific, etc., Co., 79 Fed. Repr. 459.

*John J. White* and *William C. Hannis*, for appellees.—The bill was defective in not averring that defendants had notice of the fraud: Foreman v. Bigelow, 7 Cent. Law Jour. 430; Wood v. Dummer, 3 Mason, 308; Cleveland Rolling Mill Co. v. Texas, 27 Fed. Repr. 250.

Opinion by Mr. Justice Mestrezat, April 16, 1900:

This is a bill in equity brought by Robert W. Finletter, receiver of the Acetylene Light, Heat and Power Company, against the company and its stockholders for an accounting and to compel the payment of unpaid subscriptions to its capital stock. The company was incorporated under the laws of this

state on September 4, 1895, for the purpose of "manufacturing and selling the products of calcium carbides and such other products and combinations as calcium carbides may enter into and form a constitutent part thereof for light, heat and power purposes, and such other purposes as may be incident thereto or connected therewith." The original capital stock of the company was $1,000,000, and consisted of 20,000 shares of the par value of $50.00 each, but on November 18, 1895, it was increased to $2,000,000. The names of the original subscribers to the stock and the number of shares subscribed for by each as well as the names of part of the present owners and the number of shares held by them are set out in the bill. The company purchased of Joseph A. Vincent a license to make, use and sell processes relating to the liquefaction of acetylene gas in the city and county of Philadelphia, for which it paid him $100,000 in cash and issued to him 13,000 shares of full paid up stock of the par value of $650,000. Of this stock Vincent, on September 16, 1895, assigned 5,000 shares to Dickerson and Duckert, the real owners of said processes, 3,000 shares to Edward C. Napheys, trustee, and 5,000 shares to himself. Of the increased issue of capital stock 15,000 shares were issued to Joseph A. Vincent as a consideration for a license to use said processes in a territory lying within a radius of ten miles of the public buildings in the city of Philadelphia, within this state. Of this issue of stock Vincent, on November 25, 1895, transferred 5,000 shares to Dickerson and Duckert, 5,000 shares to Edward C. Napheys, trustee, and the balance to himself. On the day last named, Napheys assigned the 8,000 shares of stock thus transferred to him by Vincent to the original subscribers to the capital stock without any consideration therefor passing to him or to the company. The appellees, John L. Appleton, Katharine P. Appleton and Joseph S. Keen, Jr., were not subscribers to the capital stock but, subsequent to the transfer by Napheys, became owners as follows: John L. Appleton, twenty shares, Katharine P. Appleton eighty-five shares and Joseph S. Keen, Jr., fifty shares. The 10,000 shares of stock retained by Joseph A. Vincent were from time to time transferred, and 100 shares thereof are now owned by William S. Perot, Jr., the other appellee.

The bill avers that at the time of the transfer of said license

by Joseph A. Vincent, it had very little, if any, value and the price paid for it was entirely fictitious and was known to be, both to the officers of the company and to the subscribers to its capital stock, as well as to Vincent; that at the time of the issue of the 18,000 shares of stock to Vincent, the company received no value therefor, and that the same was issued in fraud of the company and all its other stockholders and not from any mistake in judgment as to the value of the license, but was entirely in pursuance of the fraudulent agreement between the officers of the company, the subscribers to its stock and Joseph A. Vincent, as set out in the bill.

The bill alleges that claims against the company have been presented to the receiver amounting to about $60,000 and that the assets of the company remaining in his hands are about $9,000. The relief prayed for is, inter alia, that the debts of the company and the amount due each creditor be ascertained; that the 8,000 shares of stock issued to Vincent and transferred by him to Napheys be decreed not full paid stock; that it was issued in fraud of the company, and that the same is liable to be assessed to its full par value in the hands of its present holders to pay the debts of the company; that the 10,000 shares of stock retained by Vincent be decreed to have been issued in fraud of the company and of its stockholders, and that the same is liable up to the full par value of the stock in the hands of its present holders for such amounts in excess of what they paid therefor as may be necessary to pay the debts of the company.

The appellees demurred and set forth, inter alia, as reasons therefor, that the bill admits that they were not original subscribers to the stock or promoters of the company but were purchasers of the stock in the market; that the stock was issued as full paid to Vincent in consideration of property transferred to the company by him, and that the appellees acquired their title to the stock through Vincent; and that the bill fails to aver that they purchased the stock with notice of the fraud alleged in the bill, or were not purchasers thereof for value.

The learned court below sustained the demurrer "because the bill fails to aver that said defendants purchased their stock with notice of the fraud alleged in the bill and that they were not purchasers thereof for value."

The summary of the facts above given is taken from the bill and shows the averments on which the demurrer is based. The learned counsel for the appellant contends that the bill is drawn in conformity with established equity practice, and that the plaintiff is not required to aver that the purchasers of the stock took it with notice of the fraud alleged in the bill and that the holders are not purchasers for value.

Pleadings in equity like those at law, should show a good cause of action. Every material fact on which the plaintiff relies for relief must be distinctly and clearly averred, and that, too, with reasonable fullness and certainty: Smith v. Wood, 42 N. J. Eq. 563. He should set forth definitely and precisely in his bill the whole case upon which he seeks relief: Motley v. Rogers, 22 Ark. 227. If he does not disclose in his bill a cause of action against the defendant, the latter cannot be called upon to reply or to defend. The bill in this case shows that the defendants are owners of, but not the original subscribers to, certain full paid shares of stock. There is no allegation that they are not holders for value or holders with notice of the fraud alleged in the bill. It is conceded that they purchased their stock in the open market. As shown by the pleadings, therefore, the defendants are not responsible to the plaintiff for any unpaid subscriptions on the stock now held by them, and hence can safely rest upon their demurrer.

The appellant cites no case of this court, and we know of none that sustains his contention. His counsel state that the reason why the burden is on the purchaser of stock to show the bona fides of the transaction is that "the matter is wholly within his knowledge while it would generally be difficult, and often impossible, for the injured party to trace knowledge of the fraud to the purchaser." But we do not regard this as a sufficient reason for relieving the plaintiff from alleging in his bill that the defendants had notice of the fraud and were not holders of the stock for value. The presumption as to the ownership of other personal property, where the contrary does not appear, is that it has been acquired honestly and in good faith. It may be, and frequently is, difficult to establish fraudulent possession or ownership of property. But that is no valid reason for a presumption that property is held mala fides, and for casting the burden on the owner of showing a bona

fide ownership without, as here, a mere allegation of fraud. Fraud is not to be presumed but must be alleged as well as proved.

If a creditor of an insolvent corporation has grounds to believe that the holder of its stock is not a bona fide owner for value, he should aver it in his bill. If he does not so believe and cannot allege it, the owner should not be required to show that his acquisition of the stock was, as it is presumed to have been, in good faith and for value. He should not be compelled to defend his title until it has been attacked by proper averments in the bill.

We are unable to see that the cases relating to negotiable paper and to confidential relations, cited by the appellant's counsel, have any application to the issue raised by the pleadings in the case under review. Even in case of a suit by an indorsee against a maker of a negotiable note, the plaintiff may rest on the presumption that he obtained it for a valuable consideration, in the usual course of business and before it was due, until there is proof that the note was fraudulently issued.

We are of opinion that for the reasons assigned in the decree, the learned judge of the court below committed no error in sustaining the demurrer.

The assignment of error is overruled and the decree is affirmed.