[S. F. No. 8731.   In Bank.—September 28, 1918.]

## GEARY STREET, PARK AND OCEAN RAILROAD COMPANY (a Corporation), Respondent, v. BRADBURY ESTATE COMPANY (a Corporation), Appellant.

CORPORATIONS—CALLS FOR UNPAID SUBSCRIPTIONS—DEATH OF HOLDER—FAILURE TO PRESENT CLAIM—BAR OF OBLIGATION.—In view of section 1493 of the Code of Civil Procedure, the personal obligation of a purchaser of corporation stock to pay calls upon the original subscription is barred where the purchaser dies and no claim is presented therefor against the estate.

ID.—TRANSFER OF STOCK—RECORDATION IN BOOKS—NONLIABILITY OF TRANSFERRER FOR UNPAID SUBSCRIPTIONS.—Where a stockholder makes an absolute transfer of stock in good faith, and the transfer is duly recorded on the corporation books, he is thereby wholly discharged from all further liability upon the uncalled subscription price.

ID.—FAILURE TO RECORD TRANSFER—ENFORCEMENT OF CALLS—SALE OF STOCK.—Where a stockholder makes an absolute transfer of stock in good faith, and the transfer is not recorded on the books of the cor-

poration, the only means of enforcing calls for unpaid subscriptions is to sell the stock as provided by the Civil Code.

ID.—LIABILITY OF PURCHASER FOR CALLS.—A purchaser of corporation stock is not personally liable for calls for unpaid subscriptions, made prior to the transfer of the stock on the books, but is personally liable for calls made after the recording of the transfer.

ID.—PAYMENT OF CALLS—CONSTRUCTION OF BY-LAW.—A corporation by-law providing that stock shall after payment of all calls or installments thereon be transferable on the books, refers to the calls, or installments upon such calls, then due, and not to the unpaid balance of the stock.

ID.—UNPAID BALANCE OF SUBSCRIPTION—LACK OF KNOWLEDGE OF PURCHASER IMMATERIAL.—The fact that the purchaser did not know that there was any balance unpaid on the stock at the time he requested the transfer and accepted a new certificate is immaterial, since certificates of stock are not negotiable instruments, and the stock represented by them is subject to assessment for subscription calls, no matter to whom it may be transferred.

ID.—ENFORCEMENT OF CALLS—STATUTE OF LIMITATIONS.—The statute of limitations does not begin to run against the right of a corporation to enforce the payment of calls upon subscription for stock until the levying of the assessment and the issuance of the call.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  Daniel C. Deasy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry T. Gage, and W. I. Foley, for Appellant.

Pillsbury, Madison & Sutro, for Respondent.

THE COURT.—Defendant appeals from an adverse judgment.

By this action the plaintiff sought to recover the amount of a call upon the original subscription to thirty shares of the capital stock of plaintiff owned at the date of the commencement of the action by the defendant.  The court found defendant liable for the payment of the amount of the levied assessment.

The facts are as follows: In 1915 plaintiff, being indebted in the sum of about three hundred thousand dollars, issued a call upon the unpaid subscriptions to its capital stock for $34 a share.  This stock involved in the appeal before us had

been bought in the open market by Simona M. Bradbury some time prior to December 10, 1902. The purchase was made from a registered holder and a new certificate representing her thirty shares was issued to said Simona M. Bradbury. This writing upon its face showed no indebtedness and contained no information regarding the matter of its being fully or partially paid. While holder of the stock Simona M. Bradbury died testate on the tenth day of December, 1902. Her estate, which was of a value in excess of ten thousand dollars, was regularly distributed after probate proceedings in due form in the county of Los Angeles, where she had resided up to the time of her death. The distributees under the will of Simona M. Bradbury held the original certificate without registration on the books of the company from January 2, 1904, the date of final distribution, until May 3, 1904, when they duly sold and transferred title by bill of sale to the defendant, and within a few days a new certificate was issued to that corporation. Defendant, at the time of the sale and assignment of the stock, had not any actual knowledge or information of any unpaid balance due upon the stock by reason of the original subscription, and believed that said stock was fully paid, and knew that no claim for any unpaid balance of the subscription price had been presented against the estate of Simona M. Bradbury, deceased.

At the time of the issuance of the new certificate section 17 of the by-laws of the plaintiff corporation provided that "The stock of the company shall after payment of all calls or installments thereon be transferable on the books of the company by endorsement on the certificate by the signature of the proprietor or his attorney or legal representative, and delivery of the certificate of stock. The surrendered certificate shall in all cases be cancelled by the secretary before issuing a new one in lieu thereof."

Appellant contends that plaintiff's claim for the unpaid balance due on the original subscription, if assumed by Simona M. Bradbury as transferee during her life, is "barred forever," under the law as found in section 1493 of the Code of Civil Procedure, by plaintiff's failure to present its claim to the executors of her estate, and that this defense is available to the purchaser from the distributees under her will and to their transferee; that by its conduct plaintiff is estopped, in view of its by-law 17, from asserting that a part of the

subscription price is still due; and that in view of that same section of the by-laws plaintiff's claim is barred by its own laches.

The personal obligation or promise of Simona M. Bradbury to pay calls upon these shares in the plaintiff company, whatever its origin or nature, whether it was merely "not due" or was contingent, became forever barred by the failure of the plaintiff to file or present a claim therefor within the time limited in the notice to creditors given by the executrix of her estate after her death. Such is the express language of section 1493 of the Code of Civil Procedure, and it is further said in section 1500 that no holder of such claim shall thereafter maintain any action thereon. This does not bar him from maintaining an action against a third person, if there were any such, who was jointly or severally liable with the decedent upon the obligation, but there was no such person. The defendant had not then even come into existence.

It cannot be held liable upon the theory that it had assumed the obligation of the original subscriber for the stock; that obligation ceased to exist when Simona M. Bradbury bought the stock and had it transferred to herself on the corporate books. "Where a stockholder makes an absolute transfer of his stock in good faith, and the transfer is duly recorded on the corporate books, the transferrer is thereby wholly discharged from all further liability upon the uncalled subscription price of the stock." (1 Cook on Corporations, 7th ed., sec. 255.) By that transaction Simona M. Bradbury became the obligor. The defendant cannot be held liable for the obligation which she then assumed, for that obligation, as we have shown, was forever barred before the defendant became the owner of the shares.

It cannot be held liable on the ground that its purchase of the shares (prior to transfer on the books) rendered it personally liable to calls thereon. This is settled by the decision in *People's Home Sav. Bank* v. *Stadtmuller*, 150 Cal. 106–109, [88 Pac. 280]. In that case the registered owner of the stock died and the stock was distributed to his widow as his heir. She continued to hold the stock, but did not have it transferred to her on the corporate books. A call for the unpaid balance of the subscription was thereafter made and the corporation began suit against her to recover the same. It was held that the suit would not lie; that her ownership of the

CLXXIX Cal.—4

stock did not make her liable for the unpaid balance of the subscription price thereof, and that where stock has passed from a registered holder to a third person, whether by purchase or descent, the corporation "has no right of action against the transferee, because, as between him and the corporation, the contractual relation of stockholder has not been created." The opinion quotes with approval the following passage from section 258 of Cook on Corporations, fourth edition: "Until a transfer is recorded in the transfer-book of the corporation, the transferee, not being duly recognized as a stockholder, is not chargeable . . . with . . . unpaid balances of the subscription." It is obvious from this decision that if the defendant corporation, after having received this stock from the legatees of Simona M. Bradbury had retained it without having it transferred upon the books, no right of action for calls would ever have existed against it, personally, in favor of the plaintiff corporation. In that event the plaintiff's only means of enforcing calls would have been to sell the stock as provided in the Civil Code.

The result is that the present action can be maintained only upon the theory that by having the stock transferred to itself upon the stock books, a personal liability was thereby created against the defendant in favor of the plaintiff to pay calls upon the subscription price. This does not mean that the defendant then assumed the obligation of the original subscriber. The liability arises out of the transaction at the time of the application for the transfer on the corporation books. "If the law implies a promise by the original holders or subscribers to pay the full par value when it may be called, it follows that an assignee of stock, when he has come into privity with the company by having stock transferred to him on the company's books, is equally liable. . . . Being thus liable, there is an implied promise that he will pay calls made while he continues the owner." (3 Clark & Marshall on Corporations, sec. 564a, p. 1736; *Webster* v. *Upton,* 91 U. S. 65, [23 L. Ed. 384].) The circumstances thus existing at the time that transfer was requested and made were sufficient to create the inference that the transferee agreed to pay calls thereafter to be made. The plaintiff's stock was divided into shares of one hundred dollars each. At the time the stock was issued, $37.50 was paid upon each share and the balance of $62.50 per share remained unpaid. This was the condition

at the time the defendant obtained the transfer of these shares to itself. When a person thus comes into an enterprise with other stockholders, upon whom there is an obligation to pay calls for the remainder of the stock price, it is at least a fair inference, and the law makes it a necessary one under our decisions, that he thereby agrees that he will be bound for calls the same as other stockholders. It is upon this implied agreement that the present action is based.

The defendant claims exemption from this liability by reason of the language of section 17 of the by-laws of the company. This by-law was adopted in 1887 and still remains in force. The part relied on reads as follows: "The stock of the company shall after payment of all calls or installments thereon be transferable on the books of the company." If this could reasonably be said to mean that before the company was obliged to make such transfer it would have the right to insist on the payment of the entire balance due on the original price, there might be some ground for the claim that the acceptance of stock and the making of the transfer, without insisting on such payment and without informing the transferee that there was any balance unpaid, would create an estoppel preventing the company from afterward demanding such payment upon calls. But it is clear that this is not its meaning. If that were its meaning and it had been enforced, the result would have been an inequality among the stockholders. Those who owned the original stock would have paid only $37.50, while the subsequent transferees would have paid the full price. No such absurd interpretation is necessary. In the phrase "all calls or installments thereon," the words "installments thereon" do not refer back to the word "stock" in the prior portion of the sentence, but refer to the word "calls" directly preceding the same, and the passage means that the stock of the company shall be transferable after the payment of all calls or of all installments then due upon such calls. The unpaid balance of the stock would not become due and payable until a call therefor was made by the corporation, and then only to the extent of such call. If the call is to be paid in installments, as sometimes happens, the installments do not become due until the dates fixed therefor. The intention was that if the installments of a call had been paid up to the time of the application for transfer, the transfer would be made without in-

sisting upon the payment of subsequent installments, and that the transferee would then become liable for such subsequent installments and for all future calls on the subscription price. At the time the defendant applied to have its stock transferred, no calls had been made upon this stock and, consequently, there was no necessity for the plaintiff to demand any payment from the defendant as a condition of making the transfer.

The fact that the defendant did not know that there was any balance unpaid on the stock at the time it requested the transfer and accepted a new certificate is not a material element in the case. The rule generally prevailing is that "where one buys stock in open market, in good faith, and without notice that the subscription price thereof has not been paid-up, such a purchaser cannot be held liable to pay the unpaid balance of subscription." (1 Cook on Corporations, 7th ed., sec. 257.) It is doubtful whether the defendant, or its immediate predecessors, would come within this rule, since it does not appear that they gave any consideration. The legatees took under the will of Simona M. Bradbury and the defendant appears to be a mere holding corporation for them. But, however this may be, a different rule is established in this state. Certificates of stock, under the decisions in this state, are not negotiable instruments, and "the stock represented by them is subject to assessment for subscription calls, no matter to whom it may be transferred. The rule in this state is that certificates of stock in a corporation are but mere evidences of the holder's right to a given share in the franchises and property of the corporation and are not negotiable instruments." (*O'Dea* v. *Hollywood Cemetery Assn.*, 154 Cal. 53–72, [97 Pac. 1, 8].) The purchaser of stock buys it under the rule of *caveat emptor* and takes thereby a share in the assets of the corporation. If he desires to ascertain whether or not there is an unpaid balance due or owing on the par value of the stock, or on the subscription price, he must make inquiry on that subject. If he fails to do so, he is to be considered as having agreed to take it as it may be and to become subject to calls when he assumes the position of a stockholder by having his shares transferred to him on the books.

The law on this subject in this state, therefore, stands thus: When a purchaser buys a share of stock in the open market,

he holds the same interest in the enterprise, proportionally, as other stockholders and the stock is liable to calls, the same as other stock. The purchaser does not become personally liable to the corporation for subsequent calls until he has his transfer entered on the corporate books, or in some other manner comes into privity with the corporation as a stockholder. In an ordinary case, if the transferrer to such a purchaser is made to pay subsequent calls, he may recover the same from his vendee. (*People's Home Sav. Bank* v. *Stadtmuller, supra.*) In the present case this could not happen, for the corporation, by failing to present a claim against the estate, lost its right of personal action against Simona M. Bradbury, the only person then personally liable to calls. But the stock itself remained subject to be charged for calls for the unpaid part of the subscription price and to the enforcement of such charge by sale in the manner prescribed in the Civil Code. When the defendant had its transfer recorded on the corporate books, it then created a personal liability against itself for subsequent calls. The court below properly gave judgment for the plaintiff against defendant for the amount called in on the subscription price after it thus became personally liable.

Plaintiff's claim is not barred by the statute of limitations. The indebtedness was not payable at any time prior to the levying of the assessment and the issuance of the call. (*Union Sav. Bank* v. *Leiter*, 145 Cal. 696, [79 Pac. 441].)

The judgment is affirmed.