[L. A. No. 5189.  In Bank.—November 20, 1920.]

## C. D. RHODE, Respondent, v. DOCK–HOP COMPANY (a Corporation), et al., Appellants.

[1] CORPORATIONS — CAPITALIZATION WITH OTHER THAN MONEY — BASIS.—When the capital of a corporation is paid in something other than money, the thing accepted in lieu of money must be reasonably near its equivalent, and while the hopes or prospects for a property affect its immediate cash value, it is that cash value, and not the future value of the property if the hopes or prospects are realized, which must be taken as the basis of capitalization.

[2] ID.—ISSUANCE OF STOCK—TRANSFER OF MINING CLAIMS—STOCK-HOLDERS NOT SUBSCRIBERS.—Persons to whom shares of stock in a mining company are issued as fully paid up in consideration of the transfer to the company of certain unpatented claims, in which they had an interest and which are not worth the par value of the shares, are not subscribers, and they are not liable as subscribers to the creditors of the corporation for the unpaid balances on the par value of the shares.

[3] ID.—ACCEPTANCE OF PARTIALLY PAID STOCK—LIABILITY FOR UN-PAID BALANCE.—When one accepts partially paid stock, which does not purport to be anything else, he does so, or must be taken to do so, upon the understanding that it is answerable upon call for the unpaid balance upon it, and that he as its owner must respond to such a call.

[4] ID.—ACCEPTANCE OF PURPORTED FULLY PAID STOCK — LIABILITY FOR FURTHER CALLS.—Where a person accepts the ownership of stock which purports to be fully paid he does not enter upon the relationship of stockholder to the corporation upon any under-standing that his stock is liable for further calls on capital account, or that he, as an incident of his ownership and conse-quent relationship, assumes any such obligation.

[5] ID.—HOLDER OF WATERED STOCK—PRINCIPLE OF LIABILITY.—The principle upon which the holder of watered stock is held to make good what it is pretended the corporation received, but did not, is, that one giving credit to a corporation is entitled to rely upon its ostensible capitalization as the basis for the credit given, and that when the corporation issues watered stock and thereby as-sumes an ostensible capitalization in excess of its real assets, the transaction necessarily involves the misleading of subsequent credi-tors, and, whether done with that purpose actually in mind or not, is at least a constructive fraud upon such creditors.

[6] ID.—INNOCENT TRANSFEREE OF WATERED STOCK — LIABILITY FOR UNPAID CALLS.—One who is only a transferee of watered stock

and did not participate in the transaction whereby it was originally issued and who took his stock unaware of the character of that transaction, cannot be compelled to make good the false representation as to the capital of the company which he had no part in making and the responsibility for which he has done nothing to assume.

[7] ID.—ACCEPTANCE OF WATERED STOCK OF MINING COMPANY — IGNORANCE OF FACT — NONLIABILITY TO CREDITORS.—Holders of shares of stock in a mining corporation issued as fully paid up but in fact issued in consideration of the transfer to the corporation of mining claims worth less than the par value of the shares are not liable to creditors of the corporation for the deficiency, where they did not directly or indirectly participate in the transaction, had no knowledge when they accepted their stock that it was issued for less than its par value, and acquired it merely as transferees of one of the parties to the original transaction by which it was issued.

[8] ID.—RECOVERY OF UNPAID BALANCES ON WATERED STOCK — EVIDENCE—BURDEN OF PROOF.—In an action by a creditor of a corporation against holders of watered stock for unpaid balances on the par value of their shares, the burden is upon the plaintiff to allege and prove the connection of defendants with the fraudulent transaction.

[9] ID.—LIABILITY OF STOCKHOLDERS—CHARACTER OF PROOF.—In such action, it is sufficient to charge the defendants to show that they acquired their stock with notice or knowledge that it was issued for a consideration less than the par value of the shares.

[10] ID.—PLEADING—PARTIES DEFENDANT.—In such an action, it is not necessary to join as parties defendant all holders of watered stock.

[11] ID.—VALUATION OF CLAIMS — REPORT OF MINING ENGINEER.—In an action by a creditor of a mining corporation against the holders of watered stock issued in consideration of the transfer of mining claims to the corporation to recover the unpaid balances on their stock, a written report of a mining engineer on the claims is hearsay and inadmissible as direct evidence of the value of the claims, but is competent evidence as to the belief of the directors as to such valuation, if it appear that it was before the directors.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Reversed.

The facts are stated in the opinion of the court.

Ward Chapman and L. M. Chapman for Appellants.

Muhleman & Crump for Respondent.

OLNEY, J.—This is an action by the judgment creditor of a corporation against certain of its stockholders, seeking to collect from them what are claimed to be unpaid balances on the par value of their shares.   The plaintiff had judgment, and the defendants appeal.

No contention is made that the plaintiff's claim against the corporation is not valid.   The sole point in the case is as to whether or not the defendants are required, because of that claim, to make up any difference which may exist between what was actually paid in on their stock and its par value. Upon this point, the complaint alleged simply that the defendants were subscribers and stockholders of the corporation in amounts specified, and that only twenty-five cents on the dollar had been paid in on the par value of their shares. The answers of the defendants, in addition to some other defenses, denied that they were either subscribers or stockholders, or that the full par value of their stock had not been paid.

As to the issue presented by the latter denial, the court found in effect that only five-twelfths of the par value had been paid.   This finding is attacked as not supported by the evidence, but we think the evidence is ample.   The stock had a par value of a dollar a share, and the shares which it was claimed the defendants owned, and which in fact they did own, were part of a lot of 599,995 shares issued as fully paid up, but in consideration for the transfer to the company of certain unpatented mining claims with the improvements upon them.   These claims had been previously worked and abandoned by another company, and then relocated by one Knapp, who had been interested in the former company and was one of the promoters of the present debtor company. The history, character, and condition of these claims were such that it is well-nigh incredible that they had an actual immediate value of six hundred thousand, less five, dollars, or that the directors of the company believed they had any such value.   The directors may have thought that there was a chance of the claims becoming of that value upon development and consequent demonstration of what they actually contained, but there is a very great difference between capitalizing a mining company upon the basis of what it is hoped its ground may be worth when developed, and capitalizing it on the basis of what its ground is actually worth undeveloped.

[1] When the capital of a corporation is paid in in something other than money, the thing accepted in lieu of money must be reasonably near its equivalent, and while the hopes or prospects for a property affect its immediate cash value, it is that cash value, and not the future value of the property if the hopes or prospects are realized, which must be taken as the basis of capitalization. (*Herron* v. *Shaw,* 165 Cal. 668, 674, [Ann. Cas. 1915A, 1265, 133 Pac. 488].) In this case, the court found that the directors of the company did not believe the claims to exceed in actual value two hundred and fifty thousand dollars, and if any criticism is to be made of the finding, it is that it is too favorable to the defendants, that the figure found is too great, rather than it is too small.

As to the other denial mentioned, namely, that the defendants were neither subscribers nor stockholders of the debtor company, it was admitted at the trial that the defendants were stockholders almost from the inception of the company. It was insisted, however, on the part of the defendants throughout the trial that they were not subscribers. As to the plaintiff, the cause was tried throughout upon the theory that it made no difference whether the defendants were subscribers or not, that the simple facts that they were stockholders and that the shares they held, although issued as fully paid, were in fact issued for property which the directors did not believe was equal in value to the par value of the shares, were enough to warrant judgment against them. Apparently, judging by what took place at the trial, the court itself accepted this theory, and upon it gave judgment for the plaintiff.

It should be said, however, that the court went further than merely finding that the defendants were stockholders, and made a finding as to how they acquired their stock in the first instance. The finding is that the mining claims were transferred to the company by Knapp as the trustee of certain stockholders of the company which had formerly owned them, that the stock to be issued in consideration for such claims was issued to such stockholders upon instructions from Knapp, and that the stock of the defendants was acquired by them in that manner. [2] It is to be noted, however, that such a finding would not make either Knapp or the defendants subscribers to the stock. It does not find that either subscribed to the stock and then transferred the claims

in payment of such subscription or subscriptions. At most, the finding is one that Knapp, and through Knapp the defendants, purchased stock from the company in consideration of the transfer of the claims. The difference between subscribing for stock and then paying the subscription either in money or property and a direct purchase of stock without any antecedent obligation, a purchase of treasury stock in other words, is manifest. It is to be said that there was an omnibus finding that all of the allegations of the complaint are true, but if this finding is not to be disregarded upon the point of the defendants being subscribers because inconsistent with the special finding under discussion, it is as to that point not supported by the evidence, something which will plainly appear when we come to a discussion of the evidence. The case, then, is not one where the defendants are liable as subscribers, but one where, if they are liable at all, it is as stockholders.

It is also to be noted that unless the defendants are to be held liable merely because they were stockholders, and upon the theory that nothing more was necessary to establish their liability, the finding under discussion is not supported by any allegation in the complaint. The complaint alleges only that the defendants were subscribers and stockholders. That they were not subscribers and liable as such is plain. As to their being liable as stockholders, there is no allegation in the complaint other than that they were such. If it be the law that the owner of stock issued as fully paid, but in reality for a consideration known to the directors of the company to be less in value than the par value of the stock, is not liable for the difference in value merely because of his ownership of the stock, but only when there are further circumstances existing in the case, as, for example, that he knowingly participated in the transaction whereby the stock was issued, then there is in the present complaint no allegation of such circumstances, and it appearing that the allegation that the defendants were subscribers is not true, the complaint does not state a cause of action.

It is also to be noted that there is no finding that either Knapp or the defendants knew or believed that the value of the claim transferred was less than the par value of the stock issued in return for them. The only finding is that the directors of the company so knew and believed, and there is no find-

ing that either Knapp or any of the defendants were directors. There is very serious question as to whether stock issued as fully paid in return for property conveyed to the corporation can be considered as not fully paid, except where it is found that both parties to the transaction, the transferor of the property as well as the company through its directors, knew or believed that the property was not equal in value to the par value of the stock. If the transferor genuinely believes that his property is fully worth the par value of the stock which he is receiving in return for it, it is difficult to see any reason why the transaction should not stand as it is as to him, no matter what the directors may believe, or why he should be compelled at the suit of creditors of the corporation or otherwise to pay more on account of his stock than he agreed to pay. Because of this lack alone in the findings, it is exceedingly doubtful, therefore, if they are sufficient to sustain the judgment. We need not, however, decide the case upon this point.

Finally, in this connection it is to be noted that if the finding that Knapp transferred the claims and received the stock in consideration therefor as trustee for certain stockholders of the former company, among whom were the defendants, is to be taken as a finding that the defendants participated in the transaction, the finding is contrary to the evidence. There is no real dispute as to the facts and no doubt whatever as to what they really are. Knapp had been interested in the former company, and it can fairly be inferred that he was largely responsible for it. He had at one time managed its operations, and had then ceased to do so, undoubtedly because the company was not prospering. A new management succeeded him, and this management finally abandoned operations and something over a year later permitted its claims to lapse by failure to do the necessary assessment work. After this had occurred, Knapp relocated the claims, and, together with one Earl Stuart Rhode, who subsequently married the plaintiff, organized the present company for the purpose of working the property, and transferred the claims to it in consideration for the issue to Knapp of the stock mentioned. Under these circumstances, Knapp directed that the certificates for certain of these shares be made out in the names of certain stockholders of the former company and sent to them. This was done, and

with the certificates went a letter from Knapp to each of the recipients of the certificates, reading as follows:

"Dear Sir:

"When I surrendered control of the affairs of the Hayden Hill Gold Company in October, 1912, to the management which at that time succeeded me, it was with the distinct understanding that the new management would use every effort in their power to put the affairs of the Company on a sound business basis and that at least an attempt would be made to raise money from the sale of the Treasury Stock to the end that something definite might be acomplished in the way of actual development work at the mine.

"However, no work of a beneficial character was ever even attempted by the new management and after wasting nearly a year in costly and useless delays, the Board of Directors finally met on August 22nd last and practically decided to abandon the property without making any effort to preserve the interests of the stockholders. Abandonment was finally consummated despite the protests of Messrs. Rhode and Lemon, contituting a minority of the Board of Directors and notwithstanding my own repeated appeals that something be done to protect the interests of the stockholders.

"No assessment work was done on the claims held by the Company during the year 1913 as required by law and the property lapsed to the government January 1st, 1914. It. was at this juncture that I personally assumed the task of protecting my own interests and that of the stockholders who were unable to protect themselves, with full knowledge that the smaller stockholders of the Hayden Hill Gold Company were not even given an opportunity to protect their investment, and actuated by a sense of justice and fair play I have succeeded in making terms with the Lord Stuart Gold Company which enables me to reimburse you for the loss of your holdings in the Hayden Hill Gold Company by having an equal number of shares of the stock of the Lord Stuart Gold Company issued to you without any cost to you whatever. Herewith enclosed you will find certificates covering same. Kindly acknowledge receipt.

"I will say in conclusion that the property now held by the Lord Stuart Gold Company is in my opinion very valuable and under capable management if backed by sufficient funds could be made to pay well. The many delays in the

development of the properties have not shaken my faith in their value and if the new managament meets with the support from the stockholders that it deserves good results will follow, but it must be borne in mind that it will take money to prosecute the work of development to the point where the concern can be placed on a self sustaining basis, and the funds to begin this work must come from the stockholders. It therefore behooves the stockholders to protect their holdings and contribute to the success of the enterprise by the purchase of the Treasury Stock now for sale to the end that the affairs of the Company may be placed on a sound financial basis. Assuring you that I will put forth every effort within my power to co-operate with the new management to to the end that the enterprise may be made a success, I am,

"Very sincerely yours,"

Now, whether the motive actuating Knapp in so distributing the stock was that stated in the next to the last paragraph of his letter, namely, that he desired to protect the investments of certain stockholders in the former company, or whether it was that which might be inferred from the last paragraph, namely, that he desired to interest them so that they would purchase treasury stock and give the company some money of which it very much stood in need, or whether, as may well have been the case, it was a mixture of the two, we need not stop to inquire. In any case, his action in distributing the stock instead of keeping it all himself, was not due to any legal obligation which he owed the distributees, or to any legal relation existing between him and them. It was a purely voluntary thing done by him for motives of his own, without consultation with the distributees and without knowledge on their part that he had any intention of doing it. He calls himself a trustee for them, to be sure, but it is perfectly evident that he was a wholly self-constituted trustee, so that his actions in relocating the claims, participating in, if not inspiring, the organization of a new company to take them over, transferring the claims to that company in return for its stock, and then distributing the stock, were purely his own and were not done by him in any representative capacity. There is one circumstance which destroys at once any claim of real trusteeship. If he were in any real sense a trustee for stockholders of the former company, he was certainly a trustee for all of them. Unless his relation-

ship or character in that respect was a purely voluntary thing on his part, no reason appears why he should be trustee for some and not for others. But he recognized no relationship to the old stockholders as a class. It is only certain ones whom he selects, who are the recipients of his doubtful bounty in the way of stock. This is wholly inconsistent with any thought except that he was acting entirely on his own responsibility without any obligation or reason except such as he himself was willing to recognize. The final fact, in other words, appearing unmistakably from the evidence, is that the defendants did not participate in the transaction by which the stock was issued, either directly, or indirectly by way of representation through Knapp, but acquired and held their stock merely as transferees of Knapp.

It is also to be noted that while perhaps there is evidence which would justify a finding that the defendants, when they received and accepted their stock, knew that it was issued for a consideration less in value than its par value, there is no such finding, and the evidence is by no means conclusive, so that the fact must be considered as undetermined.

The facts of the case, then, upon the pleadings, findings, and evidence are: (1) That the defendants were not subscribers; (2) that they did not directly or indirectly participate in the transaction whereby their stock was issued for a consideration less than its par value; (3) that it does not appear that the defendants knew when they accepted their stock that it had been so issued; and (4) that the defendants acquired their stock merely as the transferees of one of the parties to the original transaction by which it was issued. Upon these facts, if the defendants are to be held liable, it must be because it is the law that one owning stock issued as fully paid but in fact for a consideration less than its par value and known to be so issued by those participating in its issuance, is liable for the difference between what the corporation did receive and what it should have received, merely because of the ownership of the stock, regardless of anything further, and, in particular, regardless of the facts that the stock was acquired by transfer, that its present owner did not participate in the transaction by which it was issued, and did not know that it had been issued for a consideration fictitious in part. Whether such be in truth the law is the prime

question presented on this appeal, and the answer to it is determinative as to whether the judgment against the defendants shall be affirmed or reversed. To its consideration we pass.

It is to be noted at the outset that there is a marked difference between the case of one acquiring and accepting stock which is only partially paid and does not purport to be otherwise, and the case of one acquiring and accepting stock which purports to be fully paid, but is not in fact, which is, in other words, what is commonly known as watered stock. The difference between the two kinds of stock is apparent and is thoroughly well recognized, and the liability of the owner in the one case to make good upon call his share of the unpaid balance of the capital of the company and his liability to do so in the other case depend upon entirely different principles. And yet the two cases are much confused, and it is not infrequently sought to apply to one class of cases the principles applicable to the other.

[3] It is apparent that when one accepts partially paid stock, which does not purport to be anything else, he does so, or must be taken to do so, upon the understanding that it is answerable upon call for the unpaid balance upon it, and that he as its owner must respond to such a call. When he enters into relationship with the corporation as one of its stockholders owning stock of that character, he assumes as an incident of the relationship the obligation to respond to calls upon him for further contributions to the capital of the company until such capital is fully paid in. (See 3 Clark & Marshall on Private Corporations, sec. 564a, and authorities there cited; *Perkins* v. *Cowles,* 157 Cal. 625, [137 Am. St. Rep. 158, 30 L. R. A. (N. S.) 283, 108 Pac. 711]; *Union Savings Bank* v. *Leiter,* 145 Cal. 696, 703, [79 Pac. 441]; *Geary etc. Co.* v. *Bradbury etc. Co.,* 179 Cal. 46, [175 Pac. 457].)

[4] But where a person accepts the ownership of stock which purports to be fully paid, a very different situation is presented. It cannot be said of him for a moment that he accepts the stock and enters upon the relation of stockholder to the corporation upon any understanding that his stock is liable for further calls on capital account, or that he, as an incident of his ownership and consequent relationship, assumes any such obligation. On the contrary, it is evident that he accepts the ownership of the stock and enters upon

the relationship of stockholder with just the contrary understanding. What, then, is the principle upon which the holder of watered stock is, under any circumstances, held obligated to supply substance instead of water, to make good what it is pretended the corporation received but did not? The answer to this question is not in doubt. [5] The stockholder is held upon the principle that one giving credit to a corporation is entitled to rely upon its ostensible capitalization as the basis for the credit given, and that when the corporation issues watered stock and thereby assumes an ostensible capitalization in excess of its real assets, the transaction necessarily involves the misleading of subsequent creditors, and, whether done with that purpose actually in mind or not, is at least a constructive fraud upon such creditors. In other words, the essence of the right of the creditor to brush aside the issuance of the stock as fully paid and to show that it was not such and to compel the payment of the balance upon it, is that its issuance as fully paid was as to him a fraud. This is now the view generally accepted in this country. (2 Clark & Marshall on Private Corporations, sec. 401a, and authorities there cited.)

Such, likewise, is the view which obtains in this state. It is true that some of our earlier decisions put the right of recovery in such a case upon the so-called trust fund doctrine. (See *Vermont etc. Co.* v. *Declez etc. Co.,* 135 Cal. 579, 583, [87 Am. St. Rep. 143, 56 L. R. A. 728, 67 Pac. 1057].) It is doubtful if by this doctrine is meant anything other than that the capital of a corporation constitutes a fund upon which its creditors have a right to rely for the payment of their claims, and that if the corporation, by knowingly issuing stock as fully paid when it is not, represents its capital to be greater than it really is, its action is a fraud upon its creditors. If the trust fund doctrine means this, the gravamen of the creditors' right of action to compel the making good of the representation as to the corporation's capital is still fraud, and the trust fund doctrine is but another way of expressing the same underlying idea. Whether this be or be not the true interpretation of the trust fund doctrine, the later decisions of this court place the right of recovery against the owner of watered stock squarely on the ground of fraud, and in one instance at least are wholly inconsistent with any other view. Thus it is said in *Harrison*

v. *Armour*, 169 Cal. 787, 790, [147 Pac. 1166]: "In such cases the rule is that where the corporation and stockholder have agreed upon a given valuation for the property transferred, such valuation is binding and conclusive unless it is fraudulent in purpose or effect. But if the parties have put upon the property a valuation in excess of what they knew or believed to be its true value, this is constructive fraud upon the creditors, and the stock will be deemed paid only to the extent of the actual value of the property received in exchange for it." (See, also, *Herron etc. Co.* v. *Shaw,* 165 Cal. 668, 672, [Ann. Cas. 1915A, 1265, 133 Pac. 488].) In *Sherman* v. *Harley,* 178 Cal. 584, [7 A. L. R. 950, 174 Pac. 901], following an intimation in *Herron etc. Co.* v. *Shaw,* just cited, a recovery was refused a creditor where it appeared that at the time he gave the corporation credit he knew that part of its ostensible capitalization was water. Such a holding is inconsistent with any view other than that essentially the creditor's right of action is based on fraud, and that therefore where he has not been misled by the fictitious capitalization he has no cause of action. In fact, the court makes the following quotation from 4 Thompson on Corporations (second edition), section 3983, as stating the reason of the decision: "On principle and authority, a creditor who deals with the corporation with full knowledge of the manner in which its shares have been paid for, is not defrauded by the taking of overvalued property as payment of stock, and is estopped to raise that question."

It must be taken, then, that the right of a creditor of a corporation, which knowingly issues shares as fully paid when they are not, to compel payment on them in full, proceeds upon the ground of fraud. This ground is entirely different from the ground upon which proceeds his right in the case of shares only partially paid up and issued as such, and it follows that a recovery may be had in the latter case when it cannot be in the former. In the case of partially paid shares issued as such, the stockholder, when he accepts his shares and enters upon the relation of stockholder, does so, as we have said, upon the condition that his shares are subject to call for the unpaid balance upon them, and that he, as their owner, will respond to such call. This obligation is an asset of the corporation which it may enforce, and which, if it does not itself do so, its unpaid creditors may

themselves enforce if it be necessary for the full discharge of their debts. It makes no difference, therefore, in such a case, whether any particular stockholder against whom a recovery is sought was a · party to the original transaction whereby the stock was issued or is only a transferee of some such party. He is·liable simply as the owner of the stock and because of the relationship with the corporation which he voluntarily assumed when he accepted such ownership.

Such, however, is not the situation of the stockholder owning shares ostensibly fully paid but not so in fact. He owes the corporation no duty to make good the difference, and there is no obligation on his part which is an asset of the corporation or which the corporation may enforce. (*Garretson* v. *Pacific Crude Oil Co.*, 146 Cal. 184, 188, [79 Pac. 838], and authorities there cited.) He is liable only because of the original transaction whereby the stock was issued for a fictitious consideration, and then only to those who were defrauded thereby. His liability, in other words, is not based upon his relationship to the corporation as a stockholder but upon a fraudulent transaction. Upon the plainest principles,. therefore, he cannot be held liable unless he was either a party to the transaction in the first instance or has in effect in some manner made himself a party since. It'is not sufficient to justify a recovery against him that it be pleaded, proven, and found only that he be a stockholder owning watered stock. Upon those facts alone the full elements necessary to make a cause of action against him do not appear.

[6] The result is, that one who is only a transferee of watered stock, and did not participate in the transaction whereby it was originally issued and who took his stock unaware of the character of that transaction, cannot be compelled to make good the false representation as to the capital of the company which he had no part in making and the responsibility for which he has done nothing to assume. This is now the well-nigh universal rule in this country (3 Clark & Marshall on Private Corporations, sec. 564f), and it is a necessary result of the underlying principle upon which a recovery is permitted in the case of watered stock. Nor has any different rule been laid down in this state. While perhaps the distinction between the liability of the owner of partially paid shares and that of the owner of watered shares has not always been clearly made in our decisions, it will be

found upon examination that in every case where a recovery
has been permitted against one acquiring stock by transfer
simply because of his ownership of the stock without anything
further, the defendant has been the owner of but partially
paid stock, that is, stock which did not purport to be fully
paid.   The most notable instance wherein such a recovery
was permitted is that of *Perkins* v. *Cowles,* 157 Cal. 625, [137
Am. St. Rep. 158, 30 L. R. A. (N. S.) 283, 108 Pac. 711].
This case is in fact strongly urged upon us as decisive of the
present case in favor of the plaintiff.   There the defendants
were transferees of the stock of a corporation, and were held
liable to make up the balance unpaid upon their shares at
the suit of the corporation's trustee in bankruptcy.   But, as
plainly stated in the opinion, the stock appeared on the books
of the corporation as but partially paid.   The defense of the
defendants was that the parties from whom they bought had
represented to them that the stock was fully paid, and that
the corporation had itself so represented to them by issuing
them certificates which contained no notation that the shares
evidenced by them were not fully paid.   As to this defense,
it was held (and this holding was the real point of the case)
that the representation by someone else than the corporation
that its shares were fully paid was not binding on the corpo-
ration or its creditors, and that the issuance of certificates
without any notation as to whether the shares were fully
paid or not was not a representation by the corporation that
they were fully paid.   Upon this latter point the decision
differs apparently from the rule generally followed elsewhere
(3 Clark & Marshall on Private Corporations, sec. 564f), but
its correctness in this respect is not material here, nor is it
of particular importance now because of the subsequent
amendment to section 323 of the Civil Code requiring all
certificates representing partially paid shares to indicate that
fact.   For the purposes of our present discussion, the point
in connection with *Perkins* v. *Cowles* is that the case was one
where a fictitious credit by way of payment upon the stock
was not given, and where it was held that the defendants
must be considered as having acquired their stock upon the
basis that it was but partially paid stock.   It is also worthy of
note that in the case of *Herron* v. *Shaw,* 165 Cal. 668, [Ann.
Cas. 1915A, 1265, 133 Pac. 488], involving the liability of
the owner of watered stock, and decided very shortly after

*Perkins* v. *Cowles,* the question as to the liability of such an owner who acquires his stock by transfer is expressly reserved.   There was no necessity for such reservation if it had been the intention of the court to decide the question in *Perkins* v. *Cowles.*   We are free, then, to follow the rule that the transferee of watered stock who takes it in ignorance of its real character is not required, even at the suit of a creditor of the company, to pay in anything more upon it, and we have no hesitation in following it, both as the rule almost universally adopted elsewhere, and as the only one consistent with the principle upon which a recovery is permitted in any case against the owner of stock issued by the corporation as fully paid.

It may be added that any other rule would have the effect of possibly subjecting the innocent purchaser of corporate stock to obligations in large amounts of which he had no conception when he acquired his stock.   The injustice of this and the serious hindrance it would be to the free sale and disposal of corporate stocks are strong reasons in addition for the adoption of the rule stated.   [7]   The conclusion so reached necessitates a reversal of the judgment against the defendants, in the present case, since, so far as appears, they were but innocent transferees of the watered stock because of which it is sought to charge them.

[8]   It may perhaps be said that the burden was on the defendants to allege and prove as a defense that they did not acquire their stock under such circumstances as would make them liable.   The answer to this is that it was an element of any cause of action against them that they be connected in some manner with the fraudulent transaction by reason of which alone they can be charged, and that by the most elementary rules of pleading and proof, the burden rested upon the plaintiff to allege and prove that such element existed. (See, also, *Finletter* v. *Appleton,* 195 Pa. St. 349, [45 Atl. 1063] ; *Davies* v. *Hall,* 64 Wash. 292, 296, [Ann. Cas. 1914B, 750, 116 Pac. 833].)

It may also be said that it clearly appears from the evidence that the defendants gave nothing for their shares and were not purchasers for value.   But this is not a case where the doctrine of *bona fide* purchasers for value has any application.   That doctrine is always one applied to protect one who has acquired certain property from some equitable

charge against the property. (2 Pomeroy's Equity Jurisprudence, secs. 737–743.) The present action is not one to enforce some equitable charge upon the defendants' shares. It is essentially one to compel the defendants to make good a false representation in defraud of the plaintiff; a suit to enforce an alleged personal liability, not a suit to enforce a lien or claim against the stock in the hands of the defendants. As an element of such a cause of action against the defendants, they must be shown either to have participated in the making of the representation or in some manner to have assumed responsibility for it. The mere fact that they received their stock as a gratuity does not show either. The fact may still be that they knew nothing about the representation and had no part in it, and cannot justly be held responsible for it in any way.

[9] In view of the necessity for a new trial, there are three further points which should be determined for the guidance of the court and parties. The first of these is as to what is necessary in order to show that the defendants, acquiring, as they did, their stock by way of transfer from Knapp, assumed responsibility for the fraudulent representation involved in the issuance of the shares as fully paid; is it enough to show that they acquired their stock with notice or knowledge that it was issued for a consideration fictitious in part, or must something more be shown? As to this, we think it sufficient that it appear that when the defendants accepted their stock they had notice or knowledge of its real character. We can see no reason why one who accepts stock with notice or knowledge that it is but partially paid, although issued as fully paid, should not be held to assume the same responsibility which he would assume if the stock were issued for what it really is, partially paid stock. He knows, or should know, its real character, and should be charged as if its ostensible character were what it really is. This is also, we believe, the practically universal rule of the decisions in other jurisdictions. (3 Clark & Marshall on Private Corporations, sec. 564f.)

[10] The second point which should be decided for the purposes of a new trial is raised by the fact that it appears that there are other stockholders who stand in exactly the same position as the defendants, and who are liable if the defendants are liable, and yet they have not been made parties

to the action. The contention of the defendants is that they should have been made parties defendant with them. But the question presented was carefully considered in *Baines* v. *Babcock*, 95 Cal. 581, [29 Am. St. Rep. 158, 27 Pac. 674, 30 Pac. 776], and there decided contrary to the defendants' contention, and that decision has been since approved and followed. (See, for example, *Blood* v. *La Serena etc. Co.*, 150 Cal. 764, [89 Pac. 1090].) It would require the strongest reasons to justify us in now overruling it, even if we had serious doubts as to its correctness, which we have not. It is attempted to distinguish *Baines* v. *Babcock* from the present case on the ground that the former was one to compel the payment of unpaid balances on stock subscriptions, while the latter is to compel the payment of unpaid balances on watered stock. But so far as the point under immediate consideration is concerned, the distinction is one without a difference.

It should, perhaps, be said that the question of whether a creditor can recover in such a case as the present for the benefit of himself alone, or whether he can recover only by a creditors' bill for the benefit of all creditors who choose to join with him, is entirely different from the question as to the necessity of making other stockholders parties defendant. But the question, while possibly suggested by the parties, is not argued by them, and as a matter of first impression would not seem to be free from doubt. (See *Baines* v. *West Coast Lumber Co.*, 104 Cal. 1, [37 Pac. 767] ; *Seymour* v. *McAvoy*, 121 Cal. 438, [41 L. R. A. 544, 53 Pac. 946] ; *Winchester* v. *Mabury*, 122 Cal. 522, [55 Pac. 393] ; *Daggett* v. *Southwest etc. Co.*, 155 Cal. 762, [103 Pac. 204] ; *In re La Jolla etc. Co.*, 243 Fed. 1004.) Under these circumstances, we have no opinion to express concerning it, and make mention of it only that it may not be confused with the question we do decide as to parties defendant.

[11] The third point on which it is advisable that we express an opinion for the purposes of a new trial is presented by the refusal of the trial court to receive in evidence a written report on the mining claims transferred by Knapp, made by one claiming to be a mining engineer and painting the prospects of those claims in sunset colors of a vivid hue. As direct evidence of the value of the claims, the report was, of course, pure hearsay, and inadmissible. If, however, it appeared, or there was sufficient to justify the inference, that

it was before the minds of the directors of the company, or the mind of Knapp when the claims were transferred in return for the stock, it was competent evidence as to the belief of the directors or Knapp as to the value of the claims. It was open to both sides to show whatever the directors and Knapp had in mind which would affect their judgment in that respect. How far it can reasonably be considered that the particular report could really affect the judgment of any rational man of any experience whatever, is a question as to its weight.

Judgment reversed, with directions that the parties be granted leave to amend their pleadings, if they so desire.

Shaw, J., Lawlor, J., Angellotti, C. J., Sloane, J., and Lennon, J., concurred.

WILBUR, J., Dissenting.—I dissent. I think that the finding that Knapp was the agent of the defendants in purchasing the capital stock is sufficiently sustained by the evidence and the inferences properly deducible therefrom. In view of the fact, however, that the finding is a general one and that it is fairly apparent from the record that neither court nor counsel had in mind the difference between the liability of the subscribers and transferee for the unpaid subscription resulting from the overvaluation of the property received in exchange therefor, I am satisfied that a new trial, where that distinction is observed is desirable. I concur in the main opinion as to the law with reference to the nonliability of transferees of stock, where the stock certificates indicate upon their face that it is fully paid, as the certificates do in this case, by reason of the present requirements of section 323 of the Civil Code hereinafter quoted. As stated in the main opinion, this court has never before passed upon the rights of transferees under similar conditions. The cases of *O'Dea* v. *Hollywood Cemetery Assn.,* 154 Cal. 53, [97 Pac. 1], *Perkins* v. *Cowles, supra,* and *Geary Street R. R. Co.* v. *Bradbury Estate Co., supra,* all dealt with stock certificates issued before the 1907 amendment to section 323 of the Civil Code, which provides as follows: "Certificates of stock, how and when issued. All corporations for profit must issue certificates for stock when fully paid up, signed by the president and secretary, and may provide, in their by-laws, for issuing certificates prior to full

payment, under such restrictions and for such purposes as their by-laws may provide, but any certificate issued prior to full payment must show on its face what amount has been paid thereon.''

I concur in the main opinion that where a certificate of stock is issued under this law, a *bona fide* purchaser, without notice, may rely upon this representation by the corporation, and in such case is not liable for the deficiency in payment for the stock resulting from the constructive fraud in its issuance as fully paid up in exchange for overvalued property. It is true, as stated in *Herron* v. *Shaw,* 165 Cal., page 674, [Ann. Cas. 1915A, 1265, 133 Pac. 490]: ''On principle, we perceive no essential difference between an exchange of full paid stock for property at a known overvaluation and a sale of such stock for money at less than par value, such as was considered in *Vermont M. Co.* v. *Declez.*'' In either case, as I understand the main opinion, the transferee, if he purchases the stock in reliance upon the representations upon the face of the certificate that it is fully paid up, and without actual or constructive notice to the contrary, is not thereby obligated to make up the deficiency to the creditors of the corporation.

On the other hand, as to stock issued previous to the amendment to section 323 of the Civil Code, the purchaser, without notice that the subscription price was partly unpaid, would nevertheless be liable for the unpaid amount of the subscription therefor, unless there was some affirmative representation by the corporation that the stock was fully paid; and, under the doctrine of *Geary Street R. R. Co.* v. *Bradbury Estate, supra,* in the absence of an express representation by the corporation that the stock is fully paid, the purchaser is bound to make inquiry of the officers of the corporation to ascertain whether the stock is fully paid, and unless so informed, is charged with knowledge of the entries in the capital stock account of the corporation with reference to the issuance of the stock. If I have thus correctly interpreted the effect of the main opinion, I concur fully therein. This conclusion is in harmony with our previous decisions and in accord with the general trend of decision throughout the United States.

Rehearing denied.

All the Justices concurred.