## LESTER *v.* BEMIS LUMBER COMPANY.

### Opinion delivered May 9, 1903.

1. LIMITATION—SUBSCRIPTION TO STOCK.—The period of limitation to an action based on the written subscription of a stockholder in a corporation is five years, and commences to run whenever an execution has been issued against the corporation and returned unsatisfied, or whenever the creditor has notice that the corporation is insolvent. (Page 382.)

2. SAME—WHEN ACTION BARRED.—An action based on the written subscription of a stockholder in a corporation is not barred, although the corporation may have been insolvent for more than five years, if the creditors had no notice of the company's insolvency until two years before the suit was brought. (Page 382.)

3. CORPORATION—POWERS.—Art. 12, § 6, of Texas Constitution, providing that "no corporation shall issue stock or bonds except for money paid, labor done, or property actually received, and all fictitious increase of stock shall be void," does not enlarge the powers of corporations, but restrains them from issuing stocks having only a fictitious value. (Page 383.)

4. STOCK SUBSCRIPTION—PAYMENT.—So far as the creditors of a corporation are concerned, the delivery of stock in another corporation is not a valid payment of a stock subscription, and where no benefit was received from the delivery of such stock, the liability of the subscriber remains. (Page 384.)

5. SAME.—If the value of property delivered in payment of a stock subscription, whether stock in another corporation or other property, be so far below the sum due on the subscription as to show that the stock or property was intentionally overvalued by the stockholders and officers of the corporation, this would entitle the creditors of the corporation to relief against the stockholder, should the corporation become insolvent. (Page 384.)

Appeal from Nevada Circuit Court in Chancery.

JOEL D. CONWAY, Judge.

Reversed.

STATEMENT BY THE COURT.

On the 5th day of February, 1895, the firm of Lester & Haltom recovered a judgment in Bowie county, Texas, against the Bemis Lumber Company, a Texas corporation, for the sum of $232.75 and $10 for costs. An execution was issued on the judgment, which was never returned.

Lester & Haltom on the 12th of February, 1900, began an action in this state against the same company to subject certain property, which they alleged belonged to the company, to the satisfaction of their judgment. Afterwards, on July 25, 1901, they filed an amended complaint in the action in which the lumber company and H. E. Bemis and W. N. Bemis were made defendants. Plaintiffs alleged that they had recovered a judgment against Bemis Lumber Company; that the company was insolvent, and the judgment unpaid. They alleged that the company was organized in Texas, under a statute of that state, on the 19th day of December, 1891, with a nominal capital of $50,000; that H. E. Bemis subscribed for $48,600 of the capital stock; that the other stockholders were all non-residents except H. N. Bemis, who was the owner of a small amount of stock. They further alleged that the capital stock which H. E. and W. N. Bemis subscribed for had never been paid for; that H. E. Bemis had pretended to pay for his stock by the delivery to the company of stock of the Kildare Lumber Company; but they alleged that the Kildare Company was insolvent, and its stock of no value; that Bemis is entitled to no credit on that account; and that both of the defendants are still due the full amount of their subscription. He asked judgment against them for the amount of his debt.

Defendants answered, and pleaded the statute of limitations. For further answer they admitted that the capital stock subscribed by H. E. Bemis has by agreement with the other stockholders been paid by the delivery of stock of the Kildare Company, but denied that it was worthless, and alleged that the Kildare Company's property was at that time worth about $300,000, and that the stock was delivered and accepted at its face value in good faith, and constituted a valid payment of the subscription.

On the hearing the chancellor decided in favor of the defendants, on the ground that the action of plaintiffs was barred by statute of limitations. Plaintiffs appealed.

*W. V. Tompkins*, for appellants.

Unpaid subscriptions due by stockholders may be reached in equity by creditors of an insolvent corporation. 34 Ark. 323; 101 U. S. 210; 3 Am. St. 797. No necessity exists for making all stockholders parties. 22 Wall. 380. Defect of parties can not be taken advantage of on appeal unless raised below. 32 Ark. 465. The stock and assets of a corporation constitute a trust fund for creditors, and it may be followed into the hands of stockholders. 143 Mo. 109; 65 Ia. 333; 78 Ia. 460; 144 U. S. 113; 17 Wall. 617; 54 Ark. 580; 91 U. S. 45; 133 Ill. 264; 15 How. 304; 5 L. R. A. 649; 3 Mass. 308; Cook, Corporations (3d ed.), § 199. Stock issued in excess of property is a badge of fraud. 2 Mor. Corp. 826; 154 Ill. 458; 143 Mo. 109. A subscription by one corporation to the capital stock of another is *ultra vires,* and also contrary to public policy. 46 Oh. St. 44; Mor. Corp. § 433; 18 L. R. A. 252; 139 U. S. 24; 160 U. S. 514; 36 Am. St. 130; 130 Ill. 268. The law of the forum governs as to statute of limitations. 18 Ark. 384; 21 Ark. 287; 34 L. R. A. 736; 48 L. R. A. 625; 19 Utah, 212. Appellant's right of action did not accrue until the execution was returned *nulla bona.* 62 Ark. 406. Or until the company had permanently abandoned business. 105 U. S. 158; 62 Ark. 406; 55 Am. Dec. 75. Or until the corporation became insolvent. 15 L. R. A. 470; 53 L. R. A. 471. The statute of limitation does not run on a fraud until it is discovered. 46 Ark. 25; 54 Am. St. 491.

*C. C. Hamby,* for appellees.

The state only may complain of *ultra vires* acts of corporations. 68 Tex. 646; 94 N. C. 37; 53 Ia. 101; 8 Otto, 621, 630. The value of property turned in on stock subscriptions, at the time of the transfer, must govern. 12 Wash. 624; 19 Wash. 96. No fraud is shown. 45 Ill. App. 226; 94 Tenn. 602; 58 Minn. 247; 43 U. S. App. 452; 75 Fed. 554; 75 Wis. 474. The holding of stock by one corporation in another is not illegal if to the advantage of the investing corporation. 62 Fed. 335; 91 Ky. 395. Insolvency may be proved otherwise than by execution returned *nulla bona.* 3 How. 533, 12 Pet. 497; 2 Otto, 156-161; 7 Otto, 171-181.

RIDDICK, J., (after stating the facts). This is an action in equity by Lester & Haltom, creditors of the Bemis Lumber Company, an insolvent Texas corporation, to compel two resident stockholders of that company to account for and pay over sums alleged to be due from them on subscriptions for stock.

The first question presented is whether the action of plaintiffs is barred by the statute of limitations. The general rule is that, before a creditor of a corporation can maintain an action against a stockholder of the corporation to compel him to pay money due on his subscription, he must first exhaust his remedies against the corporation. To maintain his action, he must, as a general rule, allege that the corporation is insolvent, and prove it by showing that he has recovered judgment against it, and that an execution has been issued against the corporation and returned unsatisfied. 1 Cook, Corporations (6th ed), § 200. But a statute of this state now permits the insolvency of the corporation to be shown by any competent evidence, and it is no longer required to sustain such an action that an execution should have been issued against the corporation and returned unsatisfied, for the action is in the nature of an equitable garnishment, and is governed by the statute in reference thereto. Sand. & H. Dig. § 3134; *Fletcher* v. *Bank of Lonoke,* *ante,* p. 1, 69 S. W. 580; *Euclid Avenue National Bank* v. *Judkins,* 66 Ark. 486.

The action in this case being based on the written subscription of the stockholder, the period of limitation is five years, under our statute, and the statute would commence to run against the creditor in favor of the stockholder of an insolvent corporation so soon as an execution had been issued on a judgment against the corporation and returned unsatisfied, or, if no execution had been issued and returned, it would commence to run whenever the creditor had notice that the corporation was insolvent, and notice to the creditor of this fact would probably be presumed as soon as the insolvency of the company became a matter of general notoriety. As no execution had been returned on the judgment against the Bemis Lumber Company, the question of whether the action is barred by the statute turns on the question whether the plaintiffs had notice that the company was insolvent more than five years before they brought suit.

Now, it plainly appears from the evidence that, though the Bemis Lumber Company may have been insolvent for five years before this suit was brought, yet that fact was not generally known, for the evidence shows that it was not known even to the stockholders of the company, much less to its creditors. One of the defendant stockholders, vice president and general manager of the company, testified that he himself had supposed that the company was solvent

as late as the year 1899, not over two years before this action was commenced, but had learned since that it was insolvent at an earlier date. There is nothing to show that the plaintiffs had information regarding the affairs of the company superior or even equal to that of the general manager of the company, and we therefore conclude that they had no notice of its insolvency five years before the commencement of their action. It follows, from what we have said, that in our opinion the action is not barred.

The evidence shows that the amount of the capital stock of the Bemis Lumber Company as named in the articles of incorporation was $50,000. H. E. Bemis subscribed for $48,600 of the amount, leaving $1,400 remaining, which was subscribed for by W. N. Bemis and the other incorporators. None of the subscriptions for stock was paid at the organization of the company, but several months afterwards H. E. Bemis delivered to the company, in payment of his subscription, stock of the Kildare Lumber Company of the face value of $50,000.

The question whether the Bemis Company had the right to receive payment for its capital stock in the stock of another company is thus presented for our consideration.

Counsel for defendant contend that the power to take stock in payment for subscriptions is expressly granted to corporations by the constitution of Texas, where this corporation was organized. The provision of the constitution referred to is as follows: "No corporation shall issue stock or bonds except for money paid, labor done, or property actually received, and all fictitious increase of stock shall be void." Texas Const., art. 12, § 6. It is said that, as this provision permits a corporation to take property in payment of subscriptions for its stock, the corporation may accept property of any kind, as no particular kind is designated by the constitution. But we are of the opinion that this is not a correct interpretation of this provision of the Texas constitution. The intention of this provision, it seems to us, was to forbid corporations from issuing stock of bonds without a valuable consideration therefor. In other words, it is a prohibition against the practice of issuing what is termed "watered" stock; that is, stock which purports to be paid in full, but which in fact has not been fully paid for. It was not intended to enlarge the powers of corporations, but is rather in the nature of a limitation restraining them from issuing stock or bonds having only a fictitious value. The property which the corporation

may accept in exchange for its stock or bonds under the provision referred to is property of the kind which the corporation may lawfully acquire and hold in carrying out the purposes of its incorporation. We must, then, to determine what property corporations may have the right to acquire and hold, look to the law outside of this provision; for the powers of Texas corporations to acquire and hold property were not, we think, affected by this provision. Now, the general rule followed by most of the courts of the United States is that one corporation has no power to acquire and hold stock in another corporation unless the power is expressly granted or necessarily implied from the nature of the corporation. There are, no doubt, exceptions to this rule, but we do not think that this case falls within them, and we are therefore of the opinion that the Bemis Lumber Company had no right to accept the stock of the Kildare Lumber Company in satisfaction of sums due from its stockholders for subscriptions. So far as the creditors of the Bemis Lumber Company are concerned, the delivery of that stock was not a valid payment of the subscription for stock made by H. E. Bemis, and, as he has paid nothing else, we think he is still liable to the creditors of the company for the full amount of his subscription. *De La Vergne Refrigerating Machine Co.* v. *German Savings Institution,* 175 U. S. 40; Morawetz, Corporations, § 431; 1 Cook, Corporations, §§ 315, 317; 7 Am. & Eng. Enc. Law (2d ed.), p. 810-3. Had the Bemis Lumber Company disposed of the Kildare stock for money, or had it received a direct pecuniary advantage from the delivery of such stock, the money thus received would have been to that extent a payment on the subscription, but, as we shall hereafter show, the Bemis Company received no benefit whatever from the delivery of such stock.

Again, granting that the subscription for stock of the Bemis Company could be discharged by the delivery of stock in another company, yet, if the value of the property delivered in payment of the subscription, whether stock or other property, be so far below the sum due on the subscription as to show that the stock or property was intentionally overvalued by the stockholders and officers of the corporation, this would entitle the creditors of the corporation to relief against the stockholder, should the corporation become insolvent, and fail to pay its debts. *Wetherbee* v. *Baker,* 35 N. J. Eq. 501; 2 Morawetz, Corporations, § 825; 20 Enc. Plead. & Prac. 746.

Now, in this case the evidence convinces us that the stock of the Kildare Lumber Company delivered by H. E. Bemis in satisfaction of his subscription for ($48,600) forty-eight thousand and six hundred dollars of the capital stock of the Bemis Lumber Company was not at the time of delivery worth anything near the amount of that subscription. The assets of the Kildare Lumber Company consisted entirely of property purchased at a sale by a receiver of the Jefferson Lumber Company. The Jefferson Lumber Company had failed, and owed large sums to various creditors. Certain of these creditors purchased the assets of the company at a receiver's sale, paying therefor the sum of thirteen thousand dollars. This property was turned over to the Kildare Company, which issued thereon stock of the face value of three hundred thousand dollars. The property turned over to the Kildare Company consisted of about thirty thousand acres of timbered land, fifteen or twenty miles of railway and several saw mills and, had it been unencumbered, was no doubt worth much more than the thirteen thousand dollars, the sum paid for it at the receiver's sale. But it is plain, we think, from the evidence that it was not worth three hundred thousand dollars, the face value of the stock, even had it been unencumbered. But it was not unencumbered. There was a mortgage on it for about seventy thousand dollars, and the subsequent foreclosure of this mortgage swept away every dollar of property that remained to the company, leaving the stock absolutely worthless. It is true that the Kildare Company had suffered loss by the burning of its saw mills of the value of twenty-five or thirty thousand dollars, but, taking this into consideration, we still feel certain that this stock of the Kildare Company was never at any time worth fifty cents on the dollar, and we think it probable that its value was much less. As before stated, the amount of the face value of the capital stock of the Kildare Company was three hundred thousand dollars. The property of the company was covered by a mortgage of seventy thousand dollars. In order to make the true value of the stock equal to its face value, the assets of the company should have aggregated about three hundred and seventy thousand dollars. If the company had that much property, we do not see how a fire which destroyed thirty thousand dollars worth of it and the foreclosure of the mortgage for seventy thousand could have consumed it all.

These undisputed facts, we think, fully support the testimony of the president of the company, who testified that in his opinion "the market value of the stock was merely nominal, and its value almost entirely problematical."

This statement of the witness is, of itself, a little vague, but it is clear that he means that in his opinion the market value of the stock was small. The facts support this view, and show that, when the officers of the Bemis Company accepted this stock at its face value in payment of a subscription for nearly all its capital stock, they intentionally overvalued it to the extent of more than double its actual value. However honest the intentions of these parties may have been, in law it was a fraud upon the right of the creditors of the corporation, which entitles them to relief. The result of this transaction, by which the Bemis Company invested practically all the proceeds of its capital stock in the stock of another company, is an excellent illustration of the wisdom of the rule which forbids corporations to invest in such stock. The failure of the Kildare Company deprived the Bemis Company of nearly all the benefits which it would have received from its capital stock, leaving it in the same situation as if its stock had been issued as a gratuity.

No question is raised here as to any defect of parties, and it is plain that H. E. Bemis owes on his stock an amount far in excess of the sum required to pay the claim of plaintiffs against the company. We are therefore of the opinion that the judgment should be reversed, and the cause remanded, with directions to enter a decree against the defendant, H. E. Bemis, for the amount of plaintiff's demand, and it is so ordered.