[Civ. No. 1258.   Second Appellate District.—November 18, 1913.]

## MERCHANTS' MUTUAL ADJUSTING AGENCY (a Corporation), Respondent, v. MOSES DAVIDSON, Appellant.

CORPORATION—STOCKHOLDERS' LIABILITY—CREDITOR'S SUIT—CONDITIONS PRECEDENT.—Where it appears from the allegations of the complaint in an action by a judgment creditor to reach unpaid subscriptions to corporate stock, that the corporation is wholly insolvent and without any assets other than those which the judgment creditor has made a futile attempt to reach by execution, he has done all that he should be required to do as a condition precedent to maintaining the action.

ID.—RETURN OF EXECUTION NULLA BONA—WHEN UNNECESSARY.—The return of an execution *nulla bona* is not a prerequisite to maintaining an action of this character, where the complaint shows that the corporation is wholly insolvent and has no assets upon which to levy an execution.

ID.—ISSUANCE OF STOCK AS PAID-UP—EFFECT OF AGREEMENT TO SUCH EFFECT.—The evidence in this case does not establish an agreement whereby the shares were sold and the certificates issued to the defendant stockholder as "paid up" stock; but conceding such agreement, if made, binding upon the corporation, it could not affect the rights of the plaintiff as a judgment creditor of the insolvent corporation to enforce payment to it of the full par value of the stock less the price actually paid therefor. This is upon the doctrine of the so-called trust fund theory.

ID.—INSOLVENT CORPORATION—TRUST FUND THEORY.—The assets of an insolvent corporation, in whatever form, are held in trust for its creditors. Among such assets are unpaid balances consisting of the difference between the par value of the stock and the amount actually paid therefor by the purchaser from the corporation, as to the payment of which, so far as the creditor is concerned, the obligation is unconditional, even though the corporation has, in selling the stock, accepted a qualified liability whereby it is estopped from enforcing payment of the balance.

ID.—FINANCIAL EMBARRASSMENT OF CORPORATION—SALE OF STOCK TO
RELIEVE.—The rights of a creditor of the insolvent corporation are
not affected by the fact that the corporation, when it sold the stock,
was in financial straits, and made the sale in good faith to relieve
its embarrassment.

APPEAL from a judgment of the Superior Court of
Tulare County. J. A. Allen, Judge.

The facts are stated in the opinion of the court.

E. I. Feemster, for Appellant.

Lamberson & Lamberson, and James M. Burke, for Respondent.

SHAW, J.—This is an action by a judgment creditor of
the Visalia Publishing House, a corporation, to collect from
defendant as a stockholder therein an unpaid balance alleged
to be due from him to the corporation upon shares of the
stock therein, the corporation being insolvent.

Defendant appeals from a judgment rendered in favor of
plaintiff.

While the corporation was a going concern defendant purchased from it shares of its capital stock of the par value of
one thousand dollars, for which he paid two hundred and
fifty dollars and has paid no more.

The first point urged by defendant for a reversal is that
by reason of the fact that the issuance of an execution
upon the judgment obtained against the corporation and a
return of *nulla bona* thereon by the sheriff is not alleged, the
complaint fails to show that plaintiff prior to the bringing
of this action had exhausted its legal remedies in an effort
to collect the judgment obtained against the publishing
house, and therefore the general demurrer interposed by defendant should have been sustained. While it is true the
complaint did not allege the return of an execution *nulla
bona,* it did allege that on the fifteenth day of February,
1910, plaintiff obtained judgment against the corporation for
the sum of $1,514.63; that at the time of the recovery of said
judgment and at all times thereafter said publishing house
was insolvent and neither owned nor had any property whatsoever, save and except the sum of seven hundred and fifty

dollars due from defendant herein on account of the alleged balance due for the purchase of shares of capital stock of said publishing house, and a similar debt due from one J. H. Butler in the sum of eight hundred and fifty dollars (for the recovery of which an action was pending); that on May 21, 1910, plaintiff caused a writ of execution to be issued upon said judgment so obtained against said publishing house and delivered it to the sheriff of the county, directing him by virtue thereof to levy upon all moneys, goods, and effects in the possession, under the control of or due from said defendant Davidson and J. H. Butler, together with all sums due and owing from them or either of them to said publishing house upon the capital stock of said Visalia Publishing House held or owned by them; "that said sheriff made due and legal service of said writ of execution, together with a notice of garnishment, upon the said Moses Davidson, the defendant herein, and the said J. H. Butler; that the said defendant Moses Davidson and the said J. H. Butler each separately made answer to said writ of execution and notice of garnishment in writing, and therein denied he was indebted to the said Visalia Publishing House in any sum, or that he had any moneys, goods, or effects due or owing to the said Visalia Publishing House in his possession or under his control," which said execution the sheriff returned with said written denials of Davidson and Butler attached thereto.

It seems to be the general rule that a creditor's claim must be reduced to judgment and execution thereon issued and returned unsatisfied before he can invoke the aid of equity in enforcing collection. (Cook on Corporations, sec. 200; Pomeroy's Equity Jurisprudence, sec. 1415.) That one adopting such course has exhausted his legal remedies admits of no doubt. Where, however, it appears, as here, from the allegations of the complaint that the corporation is wholly insolvent and without any assets other than those which the judgment creditor has made a futile attempt to reach by execution, he has done all that he should be required to do as a condition precedent to maintaining the action. As was said by Chancellor Kent: "It is one of the maxims of the common law, which is a dictate of common sense, that the law will not attempt to do an act which is vain, or to enforce an act which would be fruitless." The basis of the action is the insolvency of the

corporation. "A judgment and execution unsatisfied are evidence of insolvency, of inability to collect. They are, however, evidence only; and the fact may be established as well by other evidence, among other modes, by an assignment and continued suspension of business, or other notorious indications." (*Terry* v. *Tubman,* 92 U. S. 158, [23 L. Ed. 537].) In *Andrews* v. *O'Reilly,* 25 R. I. 231, [55 Atl. 688], the supreme court of Rhode Island, in discussing a question identical with that involved here, said: "We think, in the action to enforce the stockholder's liability, it is sufficient to allege that the creditor has exhausted all remedies which could have been fruitful, and not necessarily all remedies of mere form. The remedy of attempted levy of an execution, when it is certain in advance that nothing can come of it, is not required by the reason of the rule. The plaintiff here has alleged that a judgment against the corporation is unsatisfied because the corporation is insolvent and has no property on which an execution can be levied. If he proves this at the trial, why should he not recover his debt of the stockholder? The best and conclusive proof of the fact that the corporation has no property is the return of an officer to that effect, but he may be able to offer other proof which will be convincing. The thing involved is the impossibility of recovering the judgment from the principal debtor. The means by which this impossibility is demonstrated are of minor consequence. Even where the statute expressly provided that 'no suit shall be brought against any stockholder,' etc., 'until an execution against the company has been returned unsatisfied in whole or in part,' it was held by the supreme court of the United States in *Flash* v. *Conn,* 109 U. S. 371, [27 L. Ed. 966, 3 Sup. Ct. Rep. 263], following *Shellington* v. *Howland,* 53 N. Y. 371, that an adjudication in bankruptcy of the company excused a compliance with this condition." To the same effect is *Salt Lake Hardware Co.* v. *Tintic Milling Co.,* 13 Utah, 423, [45 Pac. 200], and *Hodges* v. *Silver Hill Min. Co.,* 9 Or. 200. In our opinion, the return of an execution *nulla bona* as a prerequisite to maintaining an action of this character is not required where the complaint shows that the corporation is wholly insolvent and has no assets upon which to levy an execution. Since it appears that plaintiff exhausted all legal remedies which under the circumstances alleged could have been fruit-

ful or availed it in any manner, its right to pursue the stock-
holder upon his liability for the unpaid balance due the cor-
poration is not affected by the fact that it failed in a matter
of mere form to do a vain and idle act.

Appellant attacks the finding "that neither the whole nor
any part of the balance of seven hundred and fifty dollars
remaining unpaid upon his said purchase of the capital stock
of said corporation, as above set forth, has ever been paid, and
that the whole of said amount, to wit: the seven hundred and
fifty dollars has been, ever since the date of said purchase,
and is now due, owing and unpaid from said defendant to
said Visalia Publishing House," claiming that it is wholly
without support. The evidence shows that at the time of
the purchase of the shares of stock by defendant the cor-
poration was badly in need of cash wherewith to conduct
its business; that of its original capital it sold to David-
son, one of its stockholders, one thousand shares of stock, of
the par value of one thouand dollars, for the sum of two hun-
dred and fifty dollars paid in cash. As shown by the min-
utes of the proceedings of the board of directors, the secre-
tary, who negotiated the sale, reported to the board of direc-
tors "the sale to M. Davidson of Porterville of 1000 shares
of the stock of the corporation at 25 cents, for the purpose of
raising money to meet a bill of one of the San Francisco paper
houses. . . . On motion of B. U. Heberling, duly seconded and
carried, the sale to M. Davidson was duly ratified." While
the secretary testifies that the stock was issued as "paid up"
stock, no indorsement of such fact appeared upon the certifi-
cates, and so far as disclosed by the record nothing whatever
was said by Davidson, the corporation, or any of its officers,
touching the question of his liability for further payments, or
which could be construed as an agreement releasing him from
the obligation implied by such purchase, though one of the
directors testifies: "My recollection is that he was not ex-
pected to pay more than that." Davidson says that he did
not in terms agree at the time to pay more than two hundred
and fifty dollars for the stock. In effect the evidence shows
that defendant bought from the corporation shares of its
stock, paying therefor twenty-five per cent of its par value,
nothing whatever being said touching the question as to pay-
ment of the balance. While in our opinion the evidence fails

to establish an agreement whereby the shares were sold and certificates therefor issued to defendant as "paid up" stock, nevertheless, while conceding such agreement, if made, binding upon the corporation, it could not affect the rights of plaintiff as a judgment creditor of the insolvent corporation to enforce payment to it of the full par value of the stock less the price actually paid therefor. This upon the doctrine of the so-called trust fund theory, first announced by Judge Story in the case of *Wood* v. *Dummer*, 3 Mason 308, [Fed. Cas. No. 17,944] ; namely: that the assets of an insolvent corporation in whatever form are held in trust for its creditors. Among such assets are unpaid balances consisting of the difference between the par value of the stock and the amount actually paid therefor by the purchaser from the corporation, as to payment of which, so far as the creditor is concerned, the obligation is unconditional, even though the corporation has in selling the stock accepted a qualified liability whereby it is estopped from enforcing payment of the balance. (*Herron Co.* v. *Shaw*, 165 Cal. 668, [133 Pac. 491] ; *Vermont etc. Co.* v. *Declez etc. Co.*, 135 Cal. 579, [87 Am. St. Rep. 143, 56 L. R. A. 728, 67 Pac. 1057] ; Cook on Corporations, sec. 42; *Sawyer* v. *Hoag*, 17 Wall. 610, [21 L. Ed. 731] ; *Upton* v. *Tribilcock*, 91 U. S. 48, [23 L. Ed. 203] ; 2 Thompson on Corporations, secs. 1564, 1567; Morawetz on Corporations, sec. 842.) Appellant lays much stress upon the fact that the corporation had pressing obligations and that the stock was sold at its full market value for the purpose of raising money to meet its financial necessities. His claim, based upon *Handley* v. *Stutz*, 139 U. S. 417, [35 L. Ed. 227, 11 Sup. Ct. Rep. 530] ; *Clark* v. *Bever*, 139 U. S. 96 [35 L. Ed. 88, 11 Sup. Ct. Rep. 468], and *Fogg* v. *Blair*, 139 U. S. 118, [35 L. Ed. 104, 11 Sup. Ct. Rep. 476], is that where a corporation sells its stock in good faith at less than par in order to procure necessary capital wherewith to conduct its business, creditors, in the event of the insolvency of the corporation, cannot enforce payment of unpaid balances from such purchasers. The cases relied upon by appellant were based upon peculiar facts which, in the opinion of the court, constituted an exception to the general rule. We confess our inability to perceive any ground for the distinction drawn or reason why the creditor of an insolvent corporation should be precluded from recovery be-

cause the corporation when it sold the stock was in financial straits and the sale made in good faith to relieve its embarrassment. Such ruling if adhered to must necessarily lead to great and inevitable confusion. Moreover, in view of the California citations, the cases cited cannot be deemed authority in support of such contention. It is worthy of note that in the later case of *Camden* v. *Stuart,* 144 U. S. 104, [36 L. Ed. 363, 12 Sup. Ct. Rep. 585], the author of the opinion in *Handley* v. *Stutz,* said: "It is the settled doctrine of this court that the trust arising in favor of creditors by subscription to the stock of a corporation cannot be defeated by a simulated payment of such subscription, nor by any device short of an actual payment in good faith. And while any ·settlement or satisfaction of such subscription may be good as between the corporation and the stockholders, it is unavailing as against the claims of the creditors. Nothing that was said in the recent cases of *Clark* v. *Bever, Fogg* v. *Blair,* or *Handley* v. *Stutz,* was intended to overrule or qualify in any way the wholesome principle adopted by this court in the earlier cases, especially as applied to the. original subscribers to stock." As to the right of creditors of an insolvent corporation to enforce such payment, no distinction can be drawn between the case of one who in form subscribes for original stock, agreeing to pay less than its par value therefor, and one who purchases original stock at less than its par value.

Our conclusion renders it unnecessary to discuss other points made by appellant.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.