[L. A. No. 5696. In Bank.—April 19, 1921.]

# W. H. A. SHERMAN, Assignee, etc., Appellant, v. S. K. D. OIL COMPANY et al., Respondents.

[1] CORPORATIONS—FAILURE TO PAY LICENSE TAX—DISSOLUTION—MATURING OF OBLIGATIONS.—The dissolution of a corporation by operation of law for failure to pay its license tax does not have the effect of maturing its obligations.

[2] ID.—WATERED STOCK—STOCKHOLDERS' LIABILITY — ACCRUAL OF RIGHT OF ACTION—STATUTE OF LIMITATIONS.—The general rule is that the right of action by a creditor against a stockholder of a corporation on his liability as a holder of watered stock does not accrue until judgment first has been obtained against the corporation and execution thereon is returned *nulla bona,* and the statute of limitations on a creditor's bill in equity against the stockholders does not begin to run until the return of the execution *nulla bona.*

[3] ID.—EXCEPTION TO RULE.—An exception to the rule requiring that judgment be first had against the corporation before the accrual of a right of action by a creditor against a stockholder on his liability as holder of watered stock is where the corporation is insolvent; in such a case the creditor may bring an action against the corporation and stockholder without first securing a judgment against the corporation and return of execution *nulla bona.*

[4] ID.—PROMISSORY NOTES OF CORPORATION—DISSOLUTION BY FAILURE TO PAY TAX—INSOLVENCY AND NOTICE OF—LIABILITY OF HOLDER OF WATERED STOCK—ACCRUAL OF CAUSE OF ACTION.—The cause of action against a holder of watered stock of a corporation to a creditor of the corporation on promissory notes executed by it accrues when the notes become due, where the corporation was dissolved on a certain date for failure to pay its license tax and was at that time insolvent and the creditor had notice thereof,

---

2. Limitation of action to enforce stockholder's statutory liability, note, 3 Ann. Cas. 505.

but the corporation was never declared an insolvent or bankrupt and no assignment for the benefit of creditors was made.

[5] ID.—CREDITOR'S BILL—STATUTE OF LIMITATIONS—SECTION 343, CODE OF CIVIL PROCEDURE.—An action by a creditor of a corporation against a stockholder on his liability by reason of being a holder of watered stock is an equitable action in the nature of a creditor's bill, and the time for filing such action is regulated by section 343 of the Code of Civil Procedure, which prescribes a four years' limitation after the cause of action shall have accrued.

[6] ID.—EXCHANGE OF PROPERTY FOR WATERED STOCK—SUBSEQUENT TRANSFEREES WITH NOTICE—STOCKHOLDER'S LIABILITY.—Stockholders of a corporation who originally received watered stock from it in exchange for property and those subsequently taking the stock with notice of the original transaction are bound to make good the difference between the value of the property transferred and the par value of the stock to creditors extending credit without notice of such overvaluation.

[7] ID.—DEFENDANTS JOINED BY AMENDED COMPLAINT—RUNNING OF STATUTE OF LIMITATIONS.—In an action against stockholders of a corporation on their liability to a creditor by reason of being holders of watered stock, as to defendants who were not made parties to the original complaint, but were joined by an amended complaint, filed beyond the statutory time for bringing the suit, the cause of action is barred, as the statute of limitations on the right of action against the stockholders was running at the same time and, hence, was operating at the time of filing of the amended complaint, which, so far as they are concerned is taken as the date of the beginning of the action.

[8] ID.—FAILURE TO TRANSFER STOCKS ON BOOKS—RIGHTS OF CREDITORS.—Failure to make the transfer of stock on the books of a corporation requires that such transfer be disregarded in considering the rights of a creditor of the corporation, for the stockholder remains liable to the creditor of a corporation in the absence of the proper transfer.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Affirmed as to certain defendants; reversed as to others.

The facts are stated in the opinion of the court.

Stutsman & Stutsman for Appellant.

Goodwin & Morgrage, Willoughby Rodman and Birney Donnell for Respondent.

WILBUR, J.—This is an action brought to recover upon stockholders' subscription liability. Forty-one stockholders were joined as defendants. Nine of these stockholders appeared and answered, and after trial of the issues judgment was rendered in their favor. Two made default and judgment was rendered against them. The S. K. D. Oil Company, defendant, was organized August 12, 1910, with a capital stock of five hundred thousand shares of a par value of one dollar each. The corporation issued its entire capital stock to G. M. Kyle as fully paid stock in exchange for a lease on thirty acres of land upon which to prospect for oil. As a part of the same transaction it was agreed between Kyle and the corporation that three hundred and seventy-five thousand shares of such stock should be returned to the corporate treasury to be sold by the corporation for its benefit. It was found by the trial court at the time of the exchange of the property for the stock the oil lease was actually worth ninety thousand dollars and that the exchange was made in good faith and in the honest belief on the part of the directors that the property acquired by them was equal in value to the stock given in exchange therefor. It is not entirely clear whether the trial court intended to find that the directors actually believed that the oil lease was worth five hundred thousand dollars or whether they believed it to be worth one hundred and twenty-five thousand dollars. The evidence, however, is undisputed on the part of the directors that they believed the lease was worth three thousand dollars per acre owing to the fact that an oil well producing one thousand barrels a day had been developed on the adjoining property and that if a successful well was obtained upon the property it would be worth much more. The finding of the trial court of good faith in the exchange of said stock is not supported by the evidence, for the directors' own testimony shows that in their judgment ninety thousand dollars was the outside value of said lease.

Plaintiff's cause of action is based upon three promissory notes assigned to him, the first promissory note dated October 15, 1911, for $4,280.34, bearing seven per cent interest, due February 16, 1912, payable to Fairbanks, Morse & Company; the second note was to J. F. Lucey Company for $2,780.23, dated November 13, 1911, payable ninety days after date and bearing seven per cent interest; the third note

was dated November 13, 1911, payable sixty days after date, for $2,038.53, at seven per cent interest.

The plaintiff alleged that on November 30, 1911, the corporate charter was forfeited for nonpayment of the license tax and that at the same time "the corporation became insolvent and bankrupt and unable to pay its debts and without properties to pay the promissory notes belonging to the plaintiff and ever since that time has been and now is wholly insolvent and bankrupt." The court further found that such insolvency and cessation of business was on November 30, 1911, known to the payees named in each of the promissory notes. The trial court held that the plaintiff's cause of action was barred by the statute of limitations. This conclusion was sustained by the district court of appeal, second district, second division, which held that the statute of limitations began to run as soon as the corporation dissolved, to wit, November 30, 1911, and, therefore, that plaintiff's cause of action was barred on all three promissory notes. This conclusion by the district court of appeal was based upon the proposition that the mere dissolution of the corporation for failure to pay its license tax at once matured all obligations against it, regardless of whether or not they were due. The petition for transfer to this court was granted because of our doubt as to the correctness of this ruling.

[1] It seems clear that the dissolution of the corporation by operation of law for failure to pay the license tax would not have the effect of maturing its obligations. The policy and effect of the laws of this state forfeiting the corporate charter for failure to pay a license tax are discussed in the recent case of *Hanson* v. *Choynski,* 180 Cal. 275, [180 Pac. 816], and it is unnecessary to repeat that discussion. It was there held that creditors of such a corporation must ordinarily pursue their usual remedies at law against the directors or trustees of the corporation. There is no statutory authority for holding that the notes, bonds, and other obligations of a corporation become due upon its dissolution for nonpayment of license tax, and the policy of the law is opposed to such a conclusion, as is clearly shown in *Hanson* v. *Choynski, supra.* If we regard this suit as an action upon three promissory notes against the defendant corporation, or its directors and trustees, the action is not barred.

Is the action barred against the stockholders on their liability in equity as holders of watered stock before action is barred against the corporation or its representatives on its note?

[2] The general rule is that the right of action by a creditor against a stockholder on such liability does not accrue until judgment first has been obtained against the corporation and execution thereon is returned *nulla bona.* (*Harmon* v. *Page,* 62 Cal. 448.) Ordinarily, therefore, a creditor may wait up to four years after the maturity of his promissory note before bringing suit against the corporation, and upon obtaining judgment and return of execution *nulla bona* may thereafter bring a creditor's bill in equity against the stockholders. The statute of limitations on this latter cause of action would not begin to run until the return of the execution *nulla bona.*

[3] There is an exception, however, to the rule requiring that judgment be first had against the corporation in cases where the corporation is insolvent. In such a case the creditor may bring an action against the corporation and stockholder without first securing a judgment against the corporation and a return of execution *nulla bona.* "Insolvency or return of execution *nulla bona* is prerequisite to maintain an action against stockholders on their subscription liabilities." (*Merchants' Mutual Adjusting Agency* v. *Davidson,* 23 Cal. App. 274, [137 Pac. 1091]; Helliwell on Stock and Stockholders, sec. 450; Clark and Marshall on Private Corporations, [p. 2459, notes 513, 514; pp. 3867, 3875 (2474, n. 586)]; 1 Cook on Corporations, sec. 108, p. 380, sec. 200, p. 532; 4 Thompson on Corporations, 2d ed., sec. 3888; 14 C. J., sec. 1725, p. 1103.) Obviously there is some difficulty in determining the exact date when the statute of limitations begins to run in favor of the stockholders in cases of insolvency, in the absence of any assignment for the benefit of creditors, or bankruptcy proceedings to fix the date of insolvency. In disposing of the contention that insolvency *per se* started the statute of limitations running in favor of a stockholder against a creditor's bill the supreme court of Ohio in *Barrick* v. *Gifford,* 47 Ohio, 180, [21 Am. St. Rep. 798, 24 N. E. 259], aptly stated:

"Such a rule would be not only uncertain, but deceptive to the creditor. The right to commence the action would be

a matter of speculation. It could not be determined before bringing the action and taking an account, whether the company was indebted in a sum greater than its assets would pay or not. A rule of certainty, applicable to such cases, should be adopted. The true rule, and that which is usually adopted where the company has property and continues to do business, is to require the creditor first to obtain a judgment against the corporation and cause an execution to be issued, and if it is returned not levied for want of goods, then the creditor has the right to commence suit against the stockholders upon their individual liability, and the statute of limitations begins to run against the right of action from that time, and not earlier.

"So long as the company is possessed of corporate property and continues to transact its business, the stockholders should be regarded as estopped from averring that the right of action against them as individuals, accrued, by reason of the insolvency of the company, at a period earlier than the return of an execution unsatisfied, issued upon the judgment of a creditor of the company. Stockholders have the means of knowing the condition of their company much better than creditors, and if the company continues to do business upon an insolvent basis, it should be regarded as permitted by the stockholders, as the directors and officers of the company derive their authority from, and are the agents of the stockholders."

In *Schofield* v. *Turner*, 213 Pa. St. 548, [62 Atl. 1068], it was said: "A misapprehension of what was decided in *Swearingen* v. *Dairy Co.*, 198 Pa. 68, [53 L. R. A. 471, 47 Atl. 941], is doubtless responsible for this appeal. . . .

"This is what was decided in that case, summed up in the following sentence: 'The right of action of the plaintiff, whatever it was, accrued upon the fact of insolvency of the dairy company shown by the assignment for the benefit of creditors, and the statute of limitations began to run from that date.' "

In Helliwell on Stock and Stockholders, section 450, it is said that such a creditor's bill may be brought against stockholders "where it appears that the corporation is insolvent, has entirely ceased to do business, has made an assignment for the benefit of creditors, and has neither money, credit, nor materials with which to do business or pay its debts."

In *Chilberg* v. *Siebenbaum,* 41 Wash. 663, [84 Pac. 598], the court distinguishes between the right of action against the corporation on the original debt and the right of action to recover against the stockholder on a creditor's bill in case of insolvency. It is there held that the bringing of an action against the corporation does not suspend the running of the statute of limitations against the stockholders until the recovery of the judgment, because judgment and return *nulla bona* are unnecessary where it is shown the same would be futile. In that case there was no property or assets of any kind belonging to the corporation. The court there said: "From the foregoing statement it will appear that the only question presented on this appeal is, when does the right of action in favor of the creditors of an insolvent corporation, as against its stockholders, to enforce the stock subscription liability, accrue? We are of opinion that such right of action accrues, at least, as soon as the corporation disposes of all of its property and assets, ceases to be a going concern and becomes notoriously insolvent, and that is as far as we are required to go in this case. . . .

"The appellant contends, however, that his action against the stockholders is based on his judgment against the corporation, not upon the original corporate indebtedness which is merged in the judgment, and that his cause of action against the stockholders did not accrue until the recovery of his judgment against the corporation and the return of *nulla bona,* or, at least, until the recovery of the judgment. If this be true, it must be for one of two reasons; first, because his right of action against the stockholders did not accrue until he exhausted his legal remedies against the corporation by the recovery of a judgment and a return of *nulla bona;* or, second, because the stockholders continue liable as long as a liability exists against the corporation, and cannot interpose the statute of limitations as a defense, unless the statute has also run in favor of the corporation. What we have said is sufficient to demonstrate the fallacy of the first proposition. An action of this kind is in the nature of a creditor's bill, and in the absence of statute, it is not necessary to first obtain a judgment against the corporation, when it is otherwise shown that such a proceeding would be utterly futile and subserve no useful purpose. *Benham* v. *Ham,* 5 Wash. 128, [34 Am. St. Rep. 851, 31

Pac. 459], Cook, Corporations, sec. 200, and authorities
above cited. Nor does the liability of the stockholder con-
tinue as long as the creditors may be able to keep their
obligations alive against the corporation.''

The supreme court of Arkansas has adopted the rule that
actual notice of the corporation's insolvency would start the
statute of limitations running in favor of a stockholder.

In the case of *Lester* v. *Bemis Lumber Co.*, 71 Ark. 379,
[74 S. W. 518], that court said: ''The period of limitation to
an action based on the written subscription of a stockholder
in a corporation is five years, and commences to run when-
ever an execution has been issued against the corporation and
returned unsatisfied, or whenever the creditor has notice
that the corporation is insolvent.''

In the case of *Lester* v. *Bemis Lumber Co.*, *supra*, that
court holds that the statute of limitations, if no execution
had been issued and returned, begins to run when a creditor
has notice of the insolvency of the corporation and that such
notice would probably be presumed when the insolvency of
the corporation became a matter of general notoriety. In
this case it is held that the corporation had been insolvent
more than the statutory period before the suit was brought,
but the fact was not generally known and hence the suit
brought was in time.

In the case of *Harmon* v. *Page*, 62 Cal. 448, *supra*, the
cause of action against the corporation accrued May 9, 1873.
Judgment against the corporation recovered May 2, 1878.
A complaint was filed on stockholders' liability August 30,
1878. The court quotes the approval from *Curry* v. *Wood-
ward*, 53 Ala. 376, as follows: '' 'Until the call was made, or
there was an evident disbandment of the company and a
relinquishment of business, the statute of limitations would
not begin to run.' To the same effect is the case of *Cherry*
v. *Lamar*, 58 Ga. 541, in which a bill was filed by the credi-
tors of a corporation to subject to the payment of their judg-
ment against it certain unpaid stock subscribed by the de-
fendants.''

In Cook on Corporations (volume 1, section 200, page 532),
it is said: ''The corporate funds are the corporate creditors'
primary resource, even where the liability of the individual
stockholder is declared to be primary, like that of an original
contractor or partner. Where, however, the corporation has

been adjudged a bankrupt, the remedy against the corporation need not first be exhausted. Such, also, has been held to be the rule where the corporation is notoriously insolvent, or has been formally dissolved. . . . '' (See, also, 4 Thompson on Corporations, 2d ed., sec. 3888.)

The rule is thus stated in Corpus Juris, volume 14, page 1103, section 1725: ''Where liability secondary. Where the stockholder's liability is secondary, as a general rule, the creditor's right of action against the stockholders on their statutory liability does not accrue, so as to set the statute of limitations running, until judgment has been recovered against the corporation, or until such judgment has been recovered and execution thereon against the corporation has been returned unsatisfied. Where, however, the corporation has done, or suffered to be done, any act which would render judgment and process against it impossible or of no avail, the creditors' right of action against the stockholders may accrue without first obtaining judgment and execution against the corporation; and, within this rule, limitations begin to run in favor of stockholders from the time the corporate property is placed in the hands of an assignee in insolvency or bankruptcy, or of a receiver, or the corporation has been dissolved, or suspended business, or from the time when by some other legal proceeding its property has been put in process of application to the payment of its debts. But the creditors' right of action against the stockholders does not accrue upon the corporation becoming insolvent in the sense, simply, that its property is insufficient for the payment of its liabilities; nor on the appointment of a receiver for the corporation merely for the purpose of carrying on its business, and not on account of its insolvency, or to wind up its affairs.''

In the case at bar three things co-operated on November 30, 1911, to the accrual of a cause of action against the stockholder: the dissolution of the corporation; the insolvency thereof, and notice of the latter to the creditor. Unless, however, the creditor was bound to commence an action against the stockholders before his right accrued against the corporation, we may assume the dates when the plaintiff's rights of action accrued against the corporation as the dates when such rights also accrued against the stockholders. In considering this matter it should be borne in mind that the

corporation was never declared an insolvent or bankrupt and that the dissolution resulted as a penalty for nonpayment of a license tax without judicial proceedings of any kind; that no assignment was made for the benefit of creditors and that it was a mere coincidence that the bankruptcy of the corporation and the dissolution thereof by operation of law occurred at the same time. Plaintiff's notes only ran sixty and ninety days. The credit was extended only a few weeks before the dissolution of the corporation upon representations of the stockholders and directors as to the status of the corporation. No case has been called to our attention and we have found none in which it has been held that the right of the creditor against the stockholder matured and the statute of limitations began to run before his obligation against the corporation matured. While it is true that a creditor may bring a suit against the stockholders upon the ground that the corporation is insolvent, the question we have to deal with is, When must the creditor bring his action? In this case we are dealing with a corporation carrying on a speculative business. The indebtedness to plaintiff's assignors was for materials used in sinking an oil well. The financial status of the corporation depended upon the success of its well-drilling operations. It was drilling in territory that was regarded as proved territory, and it could not be ascertained until the oil strata was reached or until the strata which was supposed contained oil had been passed whether or not the venture was a success or failure. The plaintiff after November 30, 1911, had the right to sue the trustees of the defunct corporation upon the obligations due to him and to attach the property of the corporation as soon as his claims were due. Under such circumstances, there being no assignment to creditors and nothing to prevent the plaintiff from pursuing his legal remedies against the corporation, or its trustees, it cannot be said that his right of action in equity against the stockholders to recover for fraudulent overvaluation of the property issued in exchange for their stock would accrue until it was manifest that the corporation or its trustees did not have sufficient property subject to attachment to pay the plaintiff's claim in full. It would seem clear that under the circumstances of this case the creditor was fully justified in waiting to bring his action against the corporation and the stockholders

until the maturity of its obligation against the corporation.
[4] We are of opinion, then, that the cause of action
against the stockholders for their amount due, because of the
issuance of the watered stock, accrued when the notes be-
came due.

The corporation could not have successfully interposed the
statute of limitations to a suit brought by the plaintiff upon
the promissory notes in question at the time this suit was
brought, to wit, February 11, 1916, except as to the third
cause of action on the note which matured January 12, 1912.
As it is conceded by the appellant that the statute of limita-
tions had run upon this last-mentioned note, we need not
give it further consideration. As to the first notes, assum-
ing that the statute of limitations on the action upon the
notes against the corporation and the statute of limitations
upon the action against the stockholders were running con-
currently because of the insolvency of the corporation, it
remains to consider whether or not that period lapsed be-
fore the bringing of the suit. If that period is four years
or more, the statute of limitations had not run as against
the first two notes. If the period is three years or less, the
statute has run as to all the notes. The defendants plead
practically all the sections fixing limitations upon actions,
and the court found in accordance with the allegations of
the answer. In the argument it is claimed that section 359
of the Code of Civil Procedure applies to the action against
the stockholder. This statute regulates the time for com-
mencing actions against stockholders of a corporation to en-
force a liability created by law and provides that such an
action must be brought within three years after the discovery
by the aggrieved party of the facts upon which the penalty
of forfeiture attached or the liability was created. Of
course, in one sense every liability is created by law and by
the acts of the parties. In that sense, and only in that
sense, is this action upon a liability created by law. Obvi-
ously, the section does not apply to suits in equity brought
to enforce the implied obligation of the stockholder to pay
the par value of the stock owned by him.

It is suggested that section 338, subdivision 4, applies.
This section provides that an action must be begun within
three years "for relief on the ground of fraud or mistake."
The cause of action in such case is not to be deemed to have

accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake. In one sense the action at bar is an action based upon fraud, that is to say, upon the fraud of the incorporators in accepting property at an overvaluation. This section makes the cause of action mature when the fraud is discovered and is not applicable to the case at bar where the right of action does not arise upon the discovery of the fraud nor before the assets of the corporation are exhausted. [5] This is an equitable action in the nature of a creditor's bill and the time for filing such action is regulated by section 343 of the Code of Civil Procedure, which provides: "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued." This section applies to equitable actions, such as a creditor's bill. (See discussion in *Piller* v. *Southern Pac. Ry.*, 52 Cal. 42; *Hecht* v. *Slaney*, 72 Cal. 363, 366, [14 Pac. 88]; *Nougues* v. *Newlands*, 118 Cal. 102, 106, [50 Pac. 386].)

It follows from the foregoing that the plaintiff's action as to the first two promissory notes which matured within four years from the commencement of the action is not barred by the statute of limitations.

It remains to consider the effect of the initial transaction by which the corporation issued its entire corporate stock and later to consider the effect of that situation upon appellant's rights against the respondent stockholders. The pleadings of the defendants, as well as their arguments before this court, would indicate that they do not claim that the lease in question was worth five hundred thousand dollars or any other sum in excess of one hundred and twenty-five thousand dollars. As between the corporation and Mr. Kyle, who transferred the lease to the corporation in exchange for all its stock, the corporation was only out one hundred and twenty-five thousand shares of stock for the lease. In any action between the corporation or its stockholders and the vendor of the lease, one hundred and twenty-five thousand shares, no doubt, would be taken to be the purchase price of the lease in determining whether or not the corporation had been defrauded. We are not considering the rights of the corporation. It is bound by the action of its directors. Nor are we considering the rights of the stockholders against the corporation or the assignor of the lease. We are considering

CLXXXV Cal.—35

the transaction solely from the standpoint of a creditor. As between the creditors of the corporation and the stockholders, the purpose, and the only purpose, of the transaction by which three hundred and seventy-five thousand shares of stock were issued by the corporation to the assignor of the lease and by him reconveyed to the corporation was to enable the corporation to sell such shares as paid-up stock for less than par. If the land conveyed to the corporation was reasonably believed by the directors to be worth five hundred thousand dollars the stock would have been thereby paid up and it would make no difference whether the corporation subsequently sold the stock returned to it for more or less than par. As between the creditor of the corporation and the stockholders the validity of the transaction does not depend upon the fact that the corporation subsequently received back a large proportion of the stock originally issued in payment for the lease. The rights of the parties must be determined with reference to the original transaction, from which it appears that the directors issued five hundred thousand dollars of stock for ninety thousand dollars worth of property. [6] Under our decisions the stockholders who received this stock in exchange for the property and those subsequently taking the stock with notice of the original transaction were bound to make good the difference between the value of the property transferred and the par value of the stock to creditors extending credit without notice of such overvaluation. (*Rhode* v. *Dock Hop Co.*, 184 Cal. 367, [12 A. L. R. 437, 194 Pac. 11].)

At this juncture we pause to consider a point raised by the defendants which, if determined in their favor, will require the affirmance of the judgment. It is claimed by the defendants that the creditors who extended credit to the corporation had full knowledge of the issuance of the stock at an overvaluation. If the creditor had full knowledge of the transaction he could not recover in a court of equity on a creditor's bill (*Rhode* v. *Dock Hop Co., supra*). It was found by the trial court that all the facts with reference to the issuance of said stock were fully known to J. F. Lucey Company, in whose favor the last two notes were executed before it extended the credit to the corporation, and that such facts were fully known to the payee of the first note at least four months before the note was executed. All of

said notes were executed in payment of an antecedent obligation. This finding, however, is not supported by the evidence. It appears therefrom that the creditors to whom these notes were given were informed that the corporation had issued one hundred and twenty-five thousand shares of its stock in payment for the oil lease. This statement was far short of informing them that five hundred thousand shares of stock had been issued for the oil lease. Of course, if the transaction amounted to a sale of the one hundred and twenty-five thousand shares of stock for the lease, the representations were substantially true and plaintiff could not recover, but, as we have held the two transactions were not equivalent so far as creditors were concerned. As to the second cause of action based upon the notes to the J. F. Lucey Company, as the original obligation was incurred in the belief that one hundred and twenty-five thousand shares of stock had been issued in payment for the lease, the plaintiff as to those notes would be estopped to claim that the lease was worth less than one hundred and twenty-five thousand dollars and would be restricted in his recovery to the difference between one hundred and twenty-five thousand dollars and five hundred thousand dollars, prorated among the various stockholders. The question as to whether or not the plaintiff is similarly restricted with reference to the note issued to the Fairbanks, Morse Company is somewhat different, because in that case the credit upon which the liability was founded was extended before the creditor had notice of the situation. However, as the promissory note was accepted in payment of the precedent obligation, so the court finds, with knowledge that the property had been taken by the corporation at a valuation of one hundred and twenty-five thousand dollars, the same rule would apply to the plaintiff on that cause of action.

It remains to consider the cause of action against the respective stockholders who appeared and defended the action, and, in order to discuss that question, it will be necessary to state further facts in regard to the several defendants involved.

The defendants W. H. Davies and Birney Donnell were not made parties to the original complaint, but were first made defendants in the amended complaint filed September 28, 1916. At that time the notes against the corporation

had been due for more than four years. [7] The statute of limitations on the right of action against the stockholders was running at the same time and, hence, was operating at the time of the filing of the amended complaint, which, so far as they are concerned, is taken as the date of the beginning of the action. (*Jeffers* v. *Cook*, 58 Cal. 147, 150; *Matteson* v. *Wagoner*, 147 Cal. 739, 746, [82 Pac. 436].) The judgment in their favor must, therefore, be affirmed.

Of the one hundred and twenty-five thousand shares of stock which were issued in consideration of the lease and were retained by the assignor, G. M. Kyle, 15,625 shares were transferred to defendant P. E. Spellacy; the same number to defendant T. Spellacy, and 31,070 shares to defendant J. F. Davies. These shares were owned by said defendants from that time until the trial of the action. In the same manner 15,625 shares were issued to J. M. Danziger and afterward sold by him in good faith to J. F. Davies, but the transfer was not recorded on the books of the corporation and at the time of the trial said shares of stock still stood on the books of the corporation in the name of J. M. Danziger. In the same manner 15,625 shares were issued to W. Morgrage. He sold and transferred to defendant Fred C. Clift 1,875 shares of stock; to defendants W. H. Davies and Birney Donnell two thousand five hundred shares each, and to persons unknown 3,750 shares, all of which were transferred upon the books of the corporation. Defendant W. Morgrage also sold the balance of five thousand shares to J. F. Davies, but no transfer was made upon the books of the corporation and the same remained in the name of defendant W. Morgrage up to the time of the trial.

[8] The failure to make the transfer on the books of the corporation requires that such transfer be disregarded in considering the rights of a creditor of a corporation, for the stockholder remains liable to the creditors of the corporation in the absence of a proper transfer. (*Realty & Rebuilding Co.* v. *Rea et al.*, 184 Cal. 565, [194 Pac. 1024]; *McCarty* v. *More*, 181 Cal. 738, [186 Pac. 140]; *Geary Street P. & O. R. R. Co.* v. *Bradbury Estate Co.*, 179 Cal. 46, [175 Pac. 457]; *Shean* v. *Cook*, 180 Cal. 92, [5 A. L. R. 1042, 179 Pac. 185]. See, also, *Security Commercial & Savings Bank of El Centro* v. *Imperial Water Co.*, 183 Cal. 488, [192 Pac. 22].)

As the liability of defendants Birney Donnell and W. H. Davies, transferees of stock, has been disposed of on the statute of limitations, it is not necessary to further consider the assignment of stock to them.

It is apparent from an examination of the record that the parties in the preparation of their appeals in the trial of the case and the court in its finding did not have in mind the distinction between subscribers for stock and purchasers and transferees of watered stock pointed out in *Rhode* v. *Dock Hop Co., supra.* That case was decided subsequent to the filing of briefs and argument of this case in this court. It was there announced that in an action to recover the difference between overvalued property and the par value of the stock in case of watered stock, it was necessary to prove that the holders of such stock participated in the transaction, or, if transferees, that they acquired this stock with notice, actual or constructive, of such fraudulent overvaluation. As all presumptions are to be indulged in in favor of the judgment, we will examine the record with a view to applying the rules announced in *Rhode* v. *Dock Hop Co., supra,* to the balance of the defendants. The complaint alleges that all of the five hundred thousand shares of stock were issued to G. M. Kyle in full payment of the purchase price of the oil lease, as fully paid stock. It is further alleged: That at said day and date and at said meeting of said board of directors, or immediately thereafter, but as a part of the same transaction, the said corporation, by its officers duly authorized, executed and delivered certain of the said shares of the said capital stock, by issuing certificates therefor to the following named defendants, all of whom subscribed for or acquired by transfer, and at all times herein mentioned owned and now own, the said shares represented by the said certificates, as follows: J. M. Danziger, 15,625 shares; J. F. Davies, 31,250 shares; G. M. Kyle, 240 shares; L. B. Kyle, 31,010 shares; W. Morgrage, 5,000 shares; P. E. Spellacy, 15,625 shares; T. Spellacy, 15,625 shares; W. H. Davies, 2,500 shares; Birney Donnell, 2,500 shares; and Frederick C. Clift, 1,875 shares. In addition to these defendants who appeared, answered, and are respondents upon appeal, the balance of the entire list of stockholders of the corporation is included in the above statement

as is shown by the succeeding paragraph of the complaint in which it is alleged that the foregoing constitute all the stockholders of the defendant corporation.

It would be a fair construction of this complaint and one that must be indulged in in support of the judgment in favor of the other defendants to conclude that all of the defendants named in the allegation, other than G. M. Kyle, acquired their stock as transferees. The recital, "but as a part of the same transaction," in the foregoing allegation is hardly sufficient to justify the conclusion that all the stockholders of the corporation specifically set forth in this paragraph participated in the original transaction, as it is elsewhere alleged that five hundred thousand shares of stock were issued to G. M. Kyle.

However, in the joint answer of J. M. Danziger, Wilbert Morgrage, P. E. Spellacy, T. Spellacy, G. M. Kyle, and J. F. Davies, it is affirmatively alleged that G. M. Kyle was the owner of the above-mentioned lease, dated July 7, 1910; that on July 8, 1910, it was agreed between defendants G. M. Kyle, J. F. Davies, P. E. Spellacy, and T. Spellacy that the defendant corporation should be formed and that Kyle should assign said lease to the corporation, and that said corporation should issue in the name of said Kyle 499,995 shares of its capital stock, 249,995 of which said shares should be retained by said Davies as fully paid and nonassessable and by him divided between himself and his associates, and the balance of two hundred and fifty thousand shares returned to the treasury of said corporation, to be sold by it and the proceeds arising therefrom to be used for the benefit of said corporation; that on July 8, 1910, the corporation was formed and Kyle assigned his lease to the corporation, which caused to be issued and delivered to said Kyle, 499,995 shares of its capital stock as fully paid and nonassessable; that said Kyle immediately returned to the corporation two hundred and fifty thousand shares of said stock. The finding of the trial court upon the matter under discussion is as follows:

"That thereafter and on August 16th, 1910, said G. M. Kyle offered to sell and convey said lease to said S. K. D. Oil Company for 500,000 shares of its capital stock fully paid, and when so issued to immediately return to the treas-

ury of said company, for the use and benefit of said company, 375,000 shares of said stock. Thereupon, the said corporation at a meeting regularly called for that purpose, accepted said proposition by resolution regularly passed and spread upon the minutes of said corporation, and on the same day, to wit, August 16th, 1910, said G. M. Kyle assigned, transferred and delivered said lease to said S. K. D. Oil Company and said S. K. D. Oil Company thereupon caused to be issued and delivered to said G. M. Kyle 500,000 shares of its capital stock as fully paid, and said G. M. Kyle on said day returned to the treasury of said company 375,000 shares of said stock, to be sold and the proceeds thereof to be applied to the use and benefit of said corporation; the remaining 125,000 shares of said stock *so issued to him* as fully-paid was then divided as follows, to wit, to T. Spellacy, 15,625 shares; to G. M. Kyle, 31,420 shares; to J. F. Davies, 31,070 shares; to P. E. Spellacy 15,625 shares; to L. B. Kyle 10 shares; to J. M. Danziger 15,625 shares; to Wilbert Morgrage 15,625 shares, all of which shares *were issued in the respective amounts to said parties respectively,* and since said issuance have stood and now stand on the books of said company in the names of said respective parties, except as to the stock of said Morgrage, as hereinafter in these findings set out. . . . ''   (Italics ours.)

The defect of the complaint in failing to sufficiently allege that the respondents participated in the original transaction is cured, so far as the defendants T. Spellacy, P. E. Spellacy, J. F. Davies, and G. M. Kyle are concerned, by the affirmative allegations of their answer. We might also infer that W. H. Davies and Wilbert Morgrage, who each received 15,625 shares, were associates of J. F. Davies within the meaning of that expression as used in their answer, in the light of the finding that the stock was divided between them and the above-mentioned defendants. Such a conclusion, however, would be a mere inference. There is no allegation in the complaint, no direct admission in the answer, and no express finding holding that W. H. Davies and Wilbert Morgrage participated in the original transaction or received their stock with knowledge thereof. All inferences are to be drawn most strongly in favor of the judgment upon appeal, and for that reason the judgment in their favor must

be affirmed. As to the defendants T. Spellacy, G. M. Kyle, J. F. Davies, and P. E. Spellacy the judgment must be reversed. It remains to consider the case of the respondent Frederick C. Clift. As already stated, he purchased 1,875 shares of stock from defendant Morgrage and caused the transfer to be recorded upon the books of the corporation. There is no allegation in the complaint that he took this stock with knowledge or notice of the original transaction. He alleges in his answer that he purchased the stock on the open market, paying therefor the full market price. He does not allege whether he received such stock with or without notice of the original transaction and there is no finding upon that question. As the complaint fails to state a cause of action against him, the judgment in his favor must be affirmed. (*Rhode* v. *Dock Hop Co., supra.*)

The judgment of dismissal included all the defendants other than two who had made default, although many of the defendants had not been served and had not appeared in the action. No point, however, was made upon this feature of the judgment and it need not receive further consideration.

The judgment will be affirmed except as to the defendants P. E. Spellacy, T. Spellacy, G. M. Kyle, and J. F. Davies; as to the said named defendants, the judgment is reversed.

Olney, J., Shaw, J., Lennon, J., Sloane, J., Lawlor, J., and Angellotti, C. J., concurred.